THE STATE OF CONNECTICUT *vs.* BESSIE J. WAKE-FIELD.

* First Judicial District, Hartford, March Term, 1914.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Under our statute (General Statutes, § 1583) one who aids, abets, counsels or commands another to commit a crime, may be prosecuted and punished as a principal, although the actual perpetrator has not been convicted.

Upon such a charge the State is bound to prove the commission of the crime as well as the aid and assistance rendered by the accused. If the actual perpetrator has already been convicted, the record of such conviction is sufficient proof of the commission of the crime unless controverted by the person charged as aider and abettor.

Statements made by one of two persons accused of crime respecting the part taken in its commission by the other, are mere hearsay and inadmissible in evidence against the latter unless uttered in his presence and hearing; and even then are not evidence of the truth of the facts stated, but are only receivable for the purpose of showing that his conduct or demeanor, in the face of such statements, was inconsistent with the claims of innocence made by him on his trial.

In the present case the accused was charged with having aided and abetted one Plew in the murder of her own husband. The State called the coroner as a witness, who testified, without objection, to statements of Plew made to him in the presence of the accused showing her participation in the crime, and also to her answers to these statements, some of which at least she denied. *Held* that

* Transferred from third judicial district.

under these circumstances the jury should have been cautioned—even though no proper request to that effect was made—that Plew's statements as narrated by the coroner were not to be accepted as evidence of the truth of the facts therein asserted, nor for any purpose except in so far as they might, in connection with the answers, the silence, or other conduct of the accused, tend to contradict or qualify her claims of innocence as made by her on her trial.

The question whether a statement made by the accused and offered in evidence by the State was freely given and fairly obtained is one of fact for the trial court.

Resort should be had to the finding of facts and not to evidence printed in the record in order to determine whether a particular instruction was requested by the appellant, and if so, whether such an instruction was germane and material to the issues presented upon the trial.

The trial court may very properly refuse to charge requests which are not relevant to the evidence and claims before the jury.

Mere knowledge of and silent acquiescence in a plan to commit crime will not render one guilty as an aider and abettor.

Proof of an agreement in words or in writing is not essential to establish the guilt of one charged with aiding and abetting another in the commission of a crime. Any influence knowingly and intentionally exerted by one to induce another to commit a crime is sufficient to render the former liable as an aider and abettor.

Argued March 3d—decided April 16th, 1914.

INDICTMENT for murder in the first degree, brought to the Superior Court in New Haven County and tried to the jury before *Burpee, J.;* verdict and judgment of guilty as charged, and appeal by the accused. *Error and new trial ordered.*

The defendant and James Plew were jointly indicted for murder in the first degree, the charge being that they wilfully, deliberately and maliciously killed the defendant's husband, William O. Wakefield, by shooting, stabbing and strangling him. Plew pleaded guilty to the indictment and left it to the court to determine the degree of his crime, pursuant to General Statutes, § 1140.

Wakefield's dead body was found in a piece of woods in the town of Cheshire, about five hundred feet from

the public highway, on June 28th, 1913; when found there were several bullet and stab wounds in the head and body; about the neck there were two shoe laces which had been tied together, making one string, a slip-noose having been formed at one end and placed and drawn tightly about the neck so that it left a deep furrow, the other end being attached to the stump of a tree; a revolver and open pocket knife were found beside the body. There was undisputed testimony tending to prove these facts, and they were not questioned upon the trial. The State claimed to have established that death was primarily due to strangulation from the tightness of the cord around the neck, and secondarily to hemorrhage from the wounds mentioned.

The State claimed that its evidence showed that Plew killed Wakefield under circumstances making it murder in the first degree, that there was an agreement between the defendant and Plew that the latter should kill her husband, or, if no express agreement, that she knew that Plew had planned to kill him and abetted, counseled and encouraged him to do it; and it claimed to have shown that on the night of June 22d Plew undertook to chloroform Wakefield in his own home, when the defendant was present, with the intention to afterward take the body to the barn and hang it to a beam, so that it might be thought to be a case of suicide, and that, this effort having failed, Plew, on the same night, persuaded Wakefield on some pretext to leave the house, and led him away to Cheshire, ten miles from his home, and there shot, stabbed and strangled him to death in the early morning of June 23d, 1913.

The defendant claimed that she made no arrangement with Plew to kill her husband, and that she did not aid and abet him in the deed, nor procure, counsel, or encourage him to do it.

*Thomas F. Devine,* for the appellant (the accused).

*Arnon A. Alling,* State's Attorney, with whom was *Walter M. Pickett,* for the appellee (the State).

THAYER, J.  The State did not claim that the defendant actually killed her husband, or that she was present aiding and abetting the person who in fact killed him.  To convict her of the crime charged in the indictment, it was therefore bound to prove that, absent, she caused, abetted, counseled or commanded its commission.  This, at common law, would make her an accessory before the fact, but not a principal in the crime.  Under our statute (General Statutes, § 1583) one so connected with the crime is a principal and may be prosecuted and punished as such before the real principal has been convicted.  The State claimed that Wakefield was killed by Plew, who was jointly indicted with the defendant.  He had not been convicted at the time of the trial and was not then on trial, having pleaded guilty to the homicide and left it to the court to determine the degree of his guilt.  General Statutes, § 1140.  The State, therefore, had the burden of proving both that Plew murdered Wakefield, and that the defendant procured, counseled or encouraged him to do it.

To establish the facts thus in issue it offered as a witness Eli Mix, coroner of New Haven county, to testify to certain statements made to him by the defendant in New Haven on the evening of July 1st, 1913, after he had informed her that he was the coroner and was investigating the death of her husband, and that she could not be compelled to make any statement, but if she wished to make one she might do so and he would take it down.  Her counsel objected to this testimony as inadmissible, on the ground that earlier, upon the same day, at Bristol, in Hartford county, she had been

examined as a witness by the coroner without being cautioned as to her rights, and because of certain language used by him during that examination, and also because she was then under restraint by the authorities of Bristol. The defendant's counsel was permitted to examine the witness, in the absence of the jury, as to what occurred on the hearing at Bristol and the circumstances under which the statement was made. From this evidence the court was satisfied that the statement offered in evidence was voluntary, and was not improperly obtained, and overruled the objection. Whether the statement was freely given and fairly obtained was a question of fact for the trial court. *State* v. *Willis*, 71 Conn. 293, 313, 41 Atl. 820. There is nothing to show that it was in error in the conclusion which was reached. The statement was not a confession. The objection to it is that it contains facts which, in connection with other facts, tend to prove the main facts in issue. There was no error in admitting the testimony.

The second assignment of error has not been pursued in the brief or oral argument and calls for no consideration.

The third and fourth are improper assignments. They allege error in the court's failure, under the circumstances disclosed by the evidence, to charge as to the law pertaining to excusable homicide, and to abandonment of the common purpose by a conspirator. The evidence is certified and made part of the record on appeal, but this is not for the purpose of disclosing errors of omission or commission in the charge. If the court failed to charge upon a point where an instruction was requested, or where the circumstances called for one, it was the duty of the appellant's counsel to request a finding showing the circumstances which he claimed called for the instruction, and, if such were the

fact, that a request was made for such an instruction and that it was refused. The court has found, in effect, that no facts were in evidence and no claim made on the trial calling for such instructions as it is now claimed should have been given. Upon this finding there was no error in failing to instruct upon the subjects mentioned in these assignments of error. If the finding is incorrect, proceedings should have been taken to have it corrected.

The fifth assignment of error is that the court erred in failing to charge that the defendant's guilt must be proved independently of the confession of Plew. There was a request that the court charge that testimony of an accomplice is insufficient to convict, and that the testimony of Plew, even if the jury believed it, was not sufficient to convict the defendant of the crime with which she was charged. This request was not given. It is apparent that the fifth reason of appeal relates to the refusal to charge this request. The notice of the defendant that she desired to review its correctness, called from the court a special finding that "no testimony of Plew was offered by either party except certain statements made in the defendant's presence and by her at the time expressly confirmed and admitted to be true, so far as she had knowledge of the matters so stated." It thus appears that the statements of Plew were before the jury, and it does not appear that they were all admitted to be true by the defendant (for it does not appear that she had knowledge of all the matters contained in them), and the fair inference from the finding is that there were some which were not admitted by her. These statements, made in her presence, so far as admitted by her, either expressly or by conduct, were properly before the jury if such admissions were inconsistent with her claims upon the trial. But they were not properly before the jury as

evidence of the truth of the facts stated therein, but only to show the defendant's inconsistent conduct. 2 Wharton on Criminal Evidence (10th Ed.) § 679; State v. Willis, 71 Conn. 293, 306, 41 Atl. 820. They were not admissible as statements or testimony of Plew. His statements out of court were, as to the defendant, mere hearsay. She was entitled to be confronted in court by the witnesses against her. If any such statements, which were not admitted or assented to by her, were received in evidence, it was the duty of the court to instruct the jury that they were not to consider them as evidence against the defendant; and in a case involving such serious consequences to the defendant as the present, we think that the jury should have been told, also, that they were not to treat the statements of Plew in which the defendant by silence or otherwise acquiesced, as testimony of Plew. Although it does not appear that any claim was made by the State in its offer of these statements, or in the argument, that they were to be treated as evidence of the facts stated, and presumably no such claim was made, yet, without some instruction as to the purpose for which they were admitted and a caution that the jury were not to consider them as testimony of Plew, the jury would be very likely to so consider them. A conviction of murder in the first degree requires the testimony of two witnesses or that which is equivalent thereto. General Statutes, § 1508. If, for want of instruction, the jury treated Plew's statements as testimony by him of the facts stated, it is quite possible that the defendant was seriously harmed by the court's failure to instruct that the statements were not to be so treated.

While in the strict sense there was no testimony or confession by Plew before the jury, so that the court was not bound to give the precise requests asked for, those requests served to call the court's attention to the

question which the defendant's counsel had in mind and the purpose which he had in view in presenting the requests. The fact that the requests were inadequate should not, in a case like this, deprive the defendant of the right to question the adequacy of the charge upon this point, provided she was injured thereby.

In the uncertainty left by the finding as to the nature of Plew's statements there referred to, and whether the defendant was harmed by the court's failure to instruct concerning them, we have examined the evidence relating thereto. It there appears that the defendant was examined by the coroner six times, including the examination at Bristol, between July 1st and July 10th, the date of her indictment. On the last occasion, July 9th, Plew was present and was questioned by the coroner, and from time to time the defendant was asked if what he said was true. Plew's examination, which was thus, without objection, placed before the jury under the guise of an admission of the defendant, occupies more than eight pages of the printed record, and gives Plew's version of the entire transaction resulting in the homicide, except what occurred after he left the Wakefield house with his victim on the night of the murder, and contains one fact which occurred at the death, and of which the defendant could have had no knowledge except by hearsay. Some of the facts thus stated were not expressly admitted or expressly denied by the defendant. Speaking of the time when Plew took Wakefield away from his house to his death, the coroner asked Plew the following questions, to which he gave the subjoined answers: "Q. Didn't she tell you to take him away from the house to do it? A. She said to push him into the lake if I could. Q. Did she say what lake? A. Lake Compounce." Then, turning to the defendant, the coroner said: "Q. That is true, is it, Mrs. Wakefield? A. I might have said

something about the lake, Mr. Mix; I don't remember. Q. You don't remember that? A. I might; I don't remember. Q. Didn't you tell Plew to push him in the lake? A. I can't remember it. I might have said it. I won't say I didn't say it." On the same day, at a prior examination when Plew was not present, the coroner asked the defendant: "Q. Mr. Plew says the first plan was that he [referring to Wakefield] was to be pushed into Lake Compounce; do you remember . . . that? A. No sir." At an examination had on the 7th of July when Plew was not present, the coroner asked the defendant: "Q. And then he [referring to Plew] said that you told him to chloroform your husband and throw him into the lake? A. No sir, Mr. Mix. Q. That isn't true? A. No sir." Her statement on the last examination, when Plew was present, that she might have said something about the lake and about pushing her husband into it, but that she didn't remember it, was far from an express admission of Plew's statement that she told him to push her husband into the lake, especially in view of her previous positive denials. Plew also, in the defendant's presence, stated to the coroner that he "didn't intend to use the revolver" and "shouldn't have used it only he got the best of me, and he would have killed me if I hadn't used it." This was something of which the defendant had no knowledge. It had a bearing upon the commission of the crime, and was in effect a declaration by Plew that he used the revolver to kill Wakefield. The question whether the defendant told Plew to push her husband into the lake was one of vital importance in the case. If she knew of Plew's plan to kill her husband, and had no part in the plan, and did not counsel, advise or abet him in forming it or carrying it into execution, she was not guilty of the crime charged. Silent acquiescence, when she knew the plan, was not enough

to make her guilty of the crime of which she was convicted. The State was bound to prove more than that, and show that she knowingly abetted, counseled or encouraged Plew in his guilty purpose. The court told the jury that to convict they "must be satisfied beyond a reasonable doubt from all the evidence produced by the State and the prisoner, that this accused woman [the defendant] was aware of the purpose which Plew had in his mind when he left her house that Sunday night, and that, in some way, by act or word, or other means, she assisted, aided, abetted, counseled, caused or commanded him to do that deed." The finding shows that the State claimed to have proved that she "abetted and counseled Plew to kill Wakefield that night, and, if feasible, by pushing him into Lake Compounce." If the defendant had voluntarily admitted before the coroner, Plew's statement that she told him to push her husband into the lake, the fact of such admission would have been admissible only as conduct on her part inconsistent with her claim that she did not counsel or encourage Plew to commit the crime. *State* v. *Willis*, 71 Conn. 293, 306, 41 Atl. 820. It is not necessary to here inquire whether her neglect to deny the statement, or her answering it as she did, she having been previously told by the coroner that she was not bound to answer questions or make a statement, was admissible as a fact inconsistent with her claim. The testimony was not objected to. If it was admissible, it was not as testimony of the defendant, but only as evidence of conduct on her part inconsistent with her claim upon the trial. The question raised by the exception which we are considering, is whether the jury should have been cautioned against weighing Plew's statement as evidence against the accused. The jury would understand that Plew knew, as well as the defendant did, whether she told him to push Wakefield

into the lake. He said that she told him to do it. She said she did not remember, she might have said it, she would not deny that she said it. If the question for the jury was whether she told him to do it, one can easily see what their conclusion must be. But this was not an issue which they were to determine. They were to consider only her conduct under the circumstances when charged with having said it. Her conduct was to be weighed in view of the circumstances under which she acted, and this should have been explained to the jury. The coroner's testimony as to what the two said was the only evidence before the jury that the defendant made the statement. Plew, confessedly, was an accomplice. Had the State called him as a witness to testify before the jury to the same statement which he made before the coroner, it would have been the duty of the court to inform the jury that he was not a full witness. His statement of the fact, when placed before the jury by the testimony of the coroner, was mere hearsay. The effect of the request was that the jury should be told that it was not evidence. Without some instruction informing them that they were not to treat his statement as evidence, they were likely to consider it the same as they would if given in court. We think that the defendant was harmed by the court's failure to give such an instruction.

The ground of the defendant's complaint in the sixth, tenth, and eleventh assignments of error is that the question of Plew's guilt was tried in connection with the question of her own guilt, that the burden of disproving his guilt was thus cast upon her, and that the court should have charged the jury that her guilt must be established independently of the guilt of Plew. As already stated, the defendant was indicted under the statute as a principal. The State, under this indictment, might establish her guilt by proving that she

killed her husband, or that another killed him and that she was present aiding and abetting, or that another killed him, she being absent, but by her procurement, counsel or command. The State undertook to prove it in the manner last stated. This, like each of the others, required it to establish the *corpus delecti*, to prove that another than the defendant did the killing in her absence and that she knowingly procured, counseled or encouraged him to do it. Plew was the person whom it undertook to prove was the perpetrator of the homicide. It was an essential fact to prove in establishing her guilt, and, as already stated, the burden was upon the State to establish it in the defendant's trial. The jury were so told in the portion of the charge complained of, and were also told that if they found Plew guilty they would then have to consider whether the defendant abetted, counseled or assisted him. The guilt of each was thus to be determined independently of that of the other, that of Plew not for the purpose of convicting him, but to establish a fact necessary to the conviction of the accused. An indictment of an accessory, prior to the statute, alleged the conviction of the principal, and that the accessory procured or counseled him to commit the crime. The court record established the first proposition, and if the accessory's defense was that the crime had not been committed, he had the burden of disproving a fact evidenced by a court record, a burden quite as great as that of which the defendant now complains. These assignments of error are without foundation.

The language complained of in the seventh reason of appeal was used in stating the issues in the case to the jury. It was a proper statement both of fact and the law.

The case was not one where the State was asking the jury to convict upon circumstantial evidence, and there

was no occasion for charging the requests contained in the eighth and sixteenth assignments of error.

The twelfth assignment of error is without foundation. The court properly told the jury that it was not necessary for the State to prove that there was an agreement in words or in writing between Plew and the defendant to commit the offense in question. An agreement or meeting of minds between the parties might be established, as the jury were told, as an inference from other facts and circumstances proved.

The defendant's counsel misconceives the purpose of the language complained of in the thirteenth reason of appeal. Having already instructed the jury under what circumstances the defendant could be convicted, and that unless proven guilty she should be discharged, the court gave the instruction here complained of to aid them in determining the degree of the crime should they find her guilty. While there is nothing in the case to indicate that, if guilty, she was less guilty than Plew, under the charge the jury might have found her so. Of this the defendant cannot complain.

The court's mistake of fact in saying to the jury that the defendant admitted as a witness certain facts which she did not admit when upon the witness-stand but admitted to the coroner, could not have harmed the defendant. The court's later language showed that the reference here was to the admissions before the coroner.

The court having, at the defendant's request, given a charge that before the accused could be found guilty the jury must find that she did by word and deed assist, abet or counsel the taking of the life of Wakefield, said: "I should add, in justice, to that statement, that if any influence was exerted by her to work upon the mind of Plew, with her knowledge and intent, it is sufficient to make her an aider and abetter and counselor and encourager of this crime." This addition was

a correct statement, and called for by what had preceded it. It was not necessary that she should have aided and abetted the crime by both word and deed or by words alone. It is quite possible, that knowing his purpose, she might, by her acts and motions and by knowingly doing what he had requested by way of preparation, have encouraged and procured him to act, and strengthened his purpose to take the life of Wakefield.

We see no reason for changing the finding as requested.

The motion to set aside the verdict was properly denied.

There is error and a new trial is ordered.

In this opinion the other judges concurred.