STATE OF CONNECTICUT *v.* PURCELL OLIVER

ALCORN, C. J., HOUSE, THIM, RYAN and BARBER, Js.

Argued October 13—decided November 23, 1970

*Edward F. Hennessey,* special public defender, for the appellant (defendant).

*Richard A. Schatz,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

House, J. The defendant was found guilty by a jury of the crime of robbery with violence in violation of § 53-14 of the General Statutes. He has appealed from the judgment, assigning error to

several rulings of the court during the course of the trial and one to the court's charge to the jury.

A preliminary brief recital of general facts is necessary to an understanding of the basis for the claims of error pressed by the defendant.

At about 7 p.m. on October 6, 1967, three men entered the Pepsi-Cola plant in Windsor and conversed with Omer Lessard, an employee, about the purchase of some Pepsi-Cola. Before leaving they also spoke for a few minutes with another employee, Howard Hill. About fifteen to thirty minutes after they had left, the three men returned to the plant. One, Robert Cade, approached Lessard, told him that it was a holdup, placed a gun to Lessard's head and directed him to the cashier's cage. A second man, subsequently identified by witnesses as the defendant Purcell Oliver, approached the cashier's cage occupied by an employee, Malcolm Hightower, and told him it was a holdup. When Hightower appeared unimpressed and skeptical, this man fired a shot from his revolver into the cashier's cage. After receiving money from Hightower, the two men forced him and Lessard to lie face down on the floor of the cashier's cage, and, with a third holdup man, removed a quantity of money and left the plant. The police were then called and Lessard and Hightower described their assailants. The police thereafter placed under surveillance a 1959 Chevrolet automobile which corresponded to a description of the car used by the holdup men to leave the scene of the robbery. About 4 a.m. on October 8, Sergeant John Riccio of the Windsor police entered the unoccupied vehicle under surveillance and removed from it a photograph showing four black men sitting at a table. The automobile was owned by Albert Harris and at the time he removed the photograph

from the automobile Sergeant Riccio had no search warrant authorizing a search of the vehicle. The police went to the separate homes of Hightower, Hill and Lessard and each of them upon being shown the photograph identified Cade and Oliver as being two of the men who had participated in the robbery.

On October 16, 1967, Oliver was arrested in Hartford and taken into custody by the Windsor police. At the time of the arrest he was advised by Detective Murray Killen of the Windsor police of his constitutional rights as required by the holding in *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. Thereafter, Detective Killen read to Oliver a printed form which set out the constitutional rights enumerated in *Miranda*. Oliver read it, checked off the specified constitutional rights, signed an acknowledgment of receipt of the warning and a waiver of rights, indicating that he understood his constitutional rights and voluntarily waived them.[1] Thereafter, Oliver was placed alone in a room in the Windsor police station, which room was equipped with a one-way mirror. He was there at separate times observed through the one-way mirror by Lessard, Hill and Hightower, all of whom separately identified him as a participant in the robbery. Later that evening Detective Killen and Chief Julian Darman of the Windsor police department again advised Oliver of his constitutional rights. Oliver thereafter executed a second written waiver of his rights and gave them an oral statement in which he admitted that he had participated in the Pepsi-Cola holdup. He refused to sign a written confession.

The defendant has assigned as error a ruling of

---

[1] The printed form used by the officer and checked off and twice signed by the defendant was the same form printed in footnote 2 in *State* v. *Benitez*, 157 Conn. 384, 389, 254 A.2d 564.

the trial court which permitted Lessard and High-tower to identify Oliver to the jury as a participant in the robbery and as the man who had fired a shot into the cashier's cage and also permitted Hill to testify before the jury that Oliver was one of the three men who had entered the Pepsi-Cola plant at about 7 p.m. on October 6, 1967. It is the claim of the defendant that this in-court identification was inadmissible on the ground that the defendant was not afforded his right to counsel at the pretrial view of the defendant by the witnesses at the police station, that the same pretrial viewing violated his rights to a fair trial and that it was error to admit the in-court identification because each of the three witnesses had previously identified the defendant through the use of an illegally seized photograph.

These claims of error are primarily predicated upon the holdings of the United States Supreme Court in *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, and *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199. We very recently had occasion to discuss the import of these two decisions in *State* v. *Duffen,* 160 Conn. 77, 273 A.2d 863. See also *State* v. *Mallette,* 159 Conn. 143, 267 A.2d 438; *State* v. *Carnegie,* 158 Conn. 264, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455. It is unnecessary to repeat here what we said in the *Duffen* case. Since the several individual police station identifications of the defendant took place on October 16, 1967, the holding of the *Wade* case is clearly applicable in the light of the ruling in *Stovall* v. *Denno,* supra, which decision was handed down on June 12, 1967, and held that the *Wade* rule was to be applied prospectively from that date. Not only were the one-man viewings of the defendant at the

police station suspect in the light of *Stovall* v. *Denno,* supra, but having been made in the absence of counsel and without a waiver following a warning of the right to the presence of counsel at the time of such identification, the procedure was clearly illegal according to the decisions of the United States Supreme Court.

That the police station identification procedure was then constitutionally proscribed does not, however, necessarily render any subsequent in-court identification of the defendant inadmissible. As the *Wade* decision, supra, 241, held, quoting from *Wong Sun* v. *United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441, the proper test is " 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of that primary taint.' " We noted in *State* v. *Duffen,* supra, the various factors which *Wade* suggested a trial court should consider in the application of this test since mere proof of the absence of counsel at a pretrial lineup is not sufficient reason to exclude a subsequent in-court identification "without first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." *United States* v. *Wade,* supra, 240.

The record discloses that the trial court properly held a preliminary hearing in the absence of the jury, and gave consideration to the factors involved in the tests approved by *Wade* and *Stovall* v. *Denno* and to "the totality of the circumstances." It found that each of the identifying witnesses had a recollec-

tion that Oliver was one of the three robbers independent of any other identifications he had made and concluded that the state had satisfied its burden of proof as to the admissibility of the in-court identification of Oliver by Lessard, Hill and Hightower. The evidence amply supports these findings and the ultimate conclusion.

This conclusion also governed the ruling of the court on the claim of the defendant that the in-court identification was improperly admitted because the identifying witnesses had previously identified the defendant in a photograph. Not only did the court conclude that the in-court identification was independent of any earlier identification made by the witnesses but it does not appear that the photographic identification procedure was improper. The photograph in which the witnesses had identified Oliver was the one taken by the police from the Harris automobile. The identifications were made separately by each of the identifying witnesses, the photograph showed four individuals, the identifications were made within two days of the robbery and after each of the witnesses had furnished to the police descriptions of the robbers, and the identification was essential for the police to determine whether they were on the right track in apprehending the robbers. In *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247, the United States Supreme Court discussed the "hazards of initial identification by photograph". It noted that "this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs." The court held "that

each case must be considered on its own facts, and that convictions based on eyewitness identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." In the light of this decision, the circumstances of the photographic identification in this case and the findings of the trial court, we find no error in this aspect of the court's ruling admitting the in-court identification of the defendant.

A further claim made by the defendant is that the in-court identification was inadmissible because the photograph in which the three witnesses identified him to the police had been illegally seized in a search of the Harris automobile without a search warrant. This assertion requires but brief comment. In the first place, the court expressly found from ample evidence that the in-court identification in the case of each of the three witnesses was independent of any earlier identification he had made. Furthermore, assuming without deciding that the search and seizure were constitutionally impermissible even in the light of *Chambers* v. *Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419, nevertheless the defendant had no standing to object to the use of the photograph taken from Harris' car. He had no possessory interest in either the car searched or the photograph seized and was not present when the vehicle was searched and the seizure made. "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman* v. *United States*, 394 U.S.

165, 171, 89 S. Ct. 961, 22 L. Ed. 2d 176; *Mancusi* v. *DeForte,* 392 U.S. 364, 88 S. Ct. 2120, 20 L. Ed. 2d 1154; *Jones* v. *United States,* 362 U.S. 257, 261, 80 S. Ct. 725, 4 L. Ed. 2d 697. We conclude that on none of the grounds claimed by the defendant was the ruling of the court erroneous in permitting the in-court identification of the defendant as one of the robbers.

A further claim of the defendant is that the court erred in permitting Detective Killen to testify to the defendant's oral confession of his participation in the robbery. This claim is predicated on an assertion that the state did not prove that Oliver was adequately advised of his right to counsel and thereafter knowingly waived that right prior to confessing. We find no merit to this assignment of error. The court properly held a preliminary hearing on the question of the admissibility of the confession with particular regard to whether it was voluntarily made and whether prior to making it Oliver was advised of his constitutional rights as prescribed in *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, and whether he knowingly and voluntarily waived his constitutional right to have counsel present while he was interrogated by the police. The court found (and these findings have not been attacked) that Oliver was fully advised of his constitutional rights on three or four occasions during the afternoon and evening of October 16, 1967, that he indicated that he understood his rights, that he did not request permission to speak to his parents or to a lawyer prior to signing a waiver of his rights and that he voluntarily executed a waiver prior to making his oral confession. The evidence amply supports these findings which fully support the conclusion of the trial court

that Oliver was adequately advised of his right to counsel prior to the interrogation, that he thereupon waived his right to counsel and that the state had satisfied its burden of proof as to the admission of his confession. See *United States* v. *Cook,* 418 F.2d 321 (9th Cir.).

A further claim of the defendant is that he was twenty years of age at the time of his confession and that his confession was inadmissible because the police did not obtain the assent of either a guardian ad litem or a parent to the defendant's waiver of his rights. There is no merit to this contention. There is nothing in our law which disqualifies a minor simply because of age from effectively waiving his rights and confessing as the defendant did. It is the totality of the circumstances of the waiver and confession rather than only the age of the defendant which determines whether a waiver of *Miranda* specified rights is valid and effective. "We cannot accept the suggestion that every minor is as a matter of law incompetent to waive his constitutional rights to remain silent and to an attorney unless the waiver is consented to by a parent or guardian who has himself been advised of the minor's rights. Of course, such adult consent is to be desired. However, whether a minor knowingly and intelligently waived these rights is a question of fact and a mere failure of the police to seek the additional consent of an adult will not outweigh, in any given instance, an evidentially supported finding that such a waiver was actually made." *People* v. *Stephen J.B.,* 23 N.Y.2d 611, 616, 246 N.E.2d 344; see also *People* v. *Lara,* 67 Cal. 2d 365, 432 P.2d 202, cert. denied, 392 U.S. 945, 88 S. Ct. 2303, 20 L. Ed. 2d 1407; *Mossbrook* v. *United States,* 409 F.2d 503 (9th Cir.).

The defendant's attack upon the court's charge to the jury is limited to a claim that the court in discussing the jury's consideration of the defendant's confession should have informed them of the rights of an accused and of the necessity on the part of the state to prove a waiver of those rights and that the court should have submitted to the jury the preliminary question whether the defendant was properly warned of his rights. He urges that Connecticut adopt the so-called "Massachusetts rule" referred to in *Jackson* v. *Denno,* 378 U.S. 368, 378, 84 S. Ct. 1774, 12 L. Ed. 2d 908, footnote 8, which follows this procedure, rather than continue to follow "the orthodox rule under which the judge himself solely and finally determines the voluntariness of the confession." *Jackson* v. *Denno,* supra, 378. The "orthodox" procedure followed by the trial court and approved in *Jackson* v. *Denno,* supra, is that consistently followed in this state. See *State* v. *Vollhardt,* 157 Conn. 25, 35–37, 244 A.2d 601; *State* v. *Darwin,* 155 Conn. 124, 149, 230 A.2d 573, rev'd on other grounds, 391 U.S. 346, 88 S. Ct. 1488, 20 L. Ed. 2d 630; *State* v. *McCarthy,* 133 Conn. 171, 177, 49 A.2d 594; *State* v. *Wakefield,* 88 Conn. 164, 90 A. 230. The exception which was taken to the charge is without merit.

There remains one further assignment of error which requires discussion. Oliver and Cade were tried together. Following evidence that the robbery was committed by three men of whom two were Oliver and Cade, Detective Killen testified that Cade gave an oral confession. He testified that Cade stated that he and two or three other men had committed the robbery, that in the course of it a shot was fired, not by him but by "one of the boys." No objection was made to this evidence. Subsequently,

Cade took the witness stand and denied that he had given the oral confession as to which Detective Killen had testified, and further denied that he was present at or participated in the robbery. His denial that he had even given the confession to which Detective Killen testified blocked any effective cross-examination on the subject by Oliver's counsel. See *Townsend* v. *Henderson,* 405 F.2d 324, 329 (6th Cir.). The defendant has raised for the first time on this appeal the claim that the introduction of Cade's confession was prejudicial error in the light of *Bruton* v. *United States,* 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476, which overruled *Delli Paoli* v. *United States,* 352 U.S. 232, 77 S. Ct. 294, 1 L. Ed. 2d 278. The *Bruton* case, decided one month after judgment was rendered in the *Oliver* case, held, in effect, that it is prejudicial error for the trial court to allow into evidence the confession of a codefendant which implicates the objecting defendant. The basis of the decision was that the implicated defendant's sixth amendment right of confrontation was abridged by reason of his inability to cross-examine the confessing codefendant. In *Roberts* v. *Russell,* 392 U.S. 293, 88 S. Ct. 1921, 20 L. Ed. 2d 1100, the United States Supreme Court held that the decision in *Bruton* applied retroactively and governed criminal trials in state as well as federal courts. Despite the lack of objection to the introduction of the evidence at the time of the trial, the defendant presses his assignment of error and we consider it in view of the decision in *O'Connor* v. *Ohio,* 385 U.S. 92, 87 S. Ct. 252, 17 L. Ed. 2d 189. See also *State* v. *Vars,* 154 Conn. 255, 271, 224 A.2d 744.

In the *Bruton* case the objectionable confession by the codefendant expressly stated that the con-

fessor and Bruton committed the robbery and this confession thus clearly incriminated Bruton. This was not the situation in the present case. Oliver was never identified by Cade as a participant in the robbery. It does not appear that his name was mentioned in the confession or that he was in any way implicated by the confession by name or otherwise. So far as any possible incrimination of Oliver is concerned, the confession went no further than to state that Cade participated in the robbery with "three or four others," unnamed, and that a shot was fired not by himself but by "one of the boys." We cannot agree with the defendant's assertion that Cade's confession was "clearly inculpatory of Oliver." See *United States* v. *Lipowitz,* 407 F.2d 597 (3d Cir.); *Commonwealth* v. *Carita,* 356 Mass. 132, 249 N.E.2d 5.

In addition, even if Cade's confession could be interpreted as inculpating Oliver its admission does not require reversal under the *Bruton* rule in view of the fact that there was independent evidence from other witnesses which implicated him, and Oliver himself had given an oral confession to the police which was properly admitted into evidence. Any *Bruton* error is harmless where the defendant himself has confessed and that confession, admitted into evidence, corroborates the confession of the codefendant. *People* v. *McNeil,* 24 N.Y.2d 550, 249 N.E.2d 383, cert. denied, sub nom. *Spain* v. *State,* 396 U.S. 937, 90 S. Ct. 282, 24 L. Ed. 2d 236; *State* v. *Hopper,* 253 La. 439, 218 So. 2d 551, cert. denied, 396 U.S. 1012, 90 S. Ct. 545, 24 L. Ed. 2d 504. "Where the jury has heard not only a codefendant's confession but the defendant's own confession no such 'devastating' risk attends the lack of confrontation as was thought to be involved in *Bruton.*"

*United States ex rel. Catanzaro v. Mancusi,* 404 F.2d 296, 300 (2d Cir.). Since we have found no error in the ruling of the court admitting the evidence of Oliver's own confession it does not appear that his inability to cross-examine.Cade in any way harmed his defense.

There.is no error.

In this opinion the other judges concurred.