## State of Connecticut *v.* James H. Oliver

House, Thim, Ryan, Shapiro and Loiselle, Js.

Argued April 14—decided June 25, 1971

*L. Scott Melville,* for the appellant (defendant).

*Joseph T. Gormley, Jr.,* state's attorney, for the appellee (state).

HOUSE, C. J.  The defendant was found guilty by a jury on two counts of indecent assault.  The fact that such assaults took place is not challenged by the defendant but he does deny that he was the assailant.  The two assaults took place within a few minutes of each other on July 1, 1968, in Stamford.  The first in time but the subject of the second count of the information occurred about 1 p.m.  The victim, to whom we shall refer as Mrs. B, was standing in a driveway when an old green car was driven into the driveway and the lone occupant, a Negro, asked her for directions.  Mrs. B approached the vehicle and was then indecently assaulted by the driver who left the scene.  She immediately reported the incident to the Stamford police, describing her assailant as a Negro with a medium dark complexion, between twenty-five and thirty-five years of age, weighing 180–190 pounds and wearing a short-sleeved, plaid, sport shirt.  She also reported the number of the New York registration plate on the car of her assailant.

Shortly after 1 o'clock on the same day the second victim, to whom we shall refer as Mrs. G, who lived on the same street as Mrs. B, was getting mail from her mailbox located about 150 feet from her garage apartment when she was  approached by a Negro in a green car bearing New York registration plates.

He asked directions and then requested permission to use Mrs. G's telephone. Mrs. G permitted him to enter her kitchen to use the telephone, whereupon she was indecently assaulted by him. The assailant was in her presence for fifteen to twenty minutes and as soon as he left she notified the Stamford police of the assault, describing her assailant as a Negro, five feet eleven inches to six feet tall, weighing 180–200 pounds, with a medium colored complexion and wearing a short-sleeved, plaid, sport shirt.

Before the trial the defendant moved for a separate trial of each of the two counts of the information. This motion was denied. During the trial he moved that the court exclude evidence of any pre-trial and in-court identification of the defendant by either of the victims of the assaults. After a hearing by the court, outside the presence of the jury, this motion also was denied. These rulings are the basis of the assignments of error claimed and briefed by the defendant and a decision on the merits of these assignments of error is dispositive of this appeal. The court properly made a finding as a result of its hearing on each of the motions.

We first consider the identification ruling in its application to the testimony of Mrs. B. The New York automobile registration reported by Mrs. B was traced to the defendant, whose physical characteristics matched the description previously supplied by Mrs. B. On July 2, two detectives for the city of New York went to his home in New York and informed him that there was a warrant for his arrest and asked him to accompany them to the 47th precinct police station. The defendant telephoned his brother-in-law, a police officer, who went to the defendant's home and conferred with the two detec-

tives. They informed him that although they had no arrest warrant police from Connecticut were coming to the station with a warrant for the arrest of the defendant and they would like him to stand in a lineup at the station. The defendant agreed to stand in a lineup if his brother-in-law would stand in it with him. Both men then went to the police station about 7:30 p.m., where the defendant was taken to the office of the detective commander, where he waited until approximately 11 p.m. At this time the brother-in-law of the defendant was informed that there would be no lineup, that the Connecticut police did not bring a warrant although they did have a person "not the witness in this particular action" and that the defendant and his brother-in-law could leave. Both men then exited into the booking area of the station and through this area out of the building.

Meanwhile, Mrs. B, accompanied by two Stamford police officers, traveled by automobile to the 47th precinct police station in the city of New York for the purpose of possibly identifying the man who had assaulted her. One of the accompanying officers told Mrs. B during the trip to the city of New York that the police had located the owner of the car, that he was at the station and they were going there possibly to make an identification. They arrived at the station at about 9:45 p.m. and Mrs. B was taken into the squad room. In her presence there was a general discussion as to how she was to view the suspect they had. The propriety of conducting a lineup was also discussed and it was decided not to conduct any lineup. Instead, Mrs. B was asked to go into the booking area and observe persons coming in and out and see if she could identify any individual who might pass through that room. She observed approx-

imately twenty to twenty-five persons, both blacks and whites, passing through the room. The detective who stood with her had never seen the defendant before and was, therefore, unable to suggest anything to her. After about fifteen or twenty minutes, Mrs. B observed the defendant accompanied by another man walking through the booking area and identified the defendant as her assailant.

The second instance of out-of-court identification was somewhat similar in the case of each of the assault victims. On July 8, at about 11 a.m., the defendant was arrested in Bridgeport, taken from there to the Circuit Court in Stamford and from there to the Stamford police station where he was "processed." On the same day, between noon and 12:30 p.m., both assault victims arrived at the detective bureau rooms at the Stamford police station. They were seated at separate desks about twelve to fifteen feet apart and told to look at a series of photographs to see if they could identify one of them as a picture of their assailant and, if they made such an identification, to write their name on the back of the photograph. Eleven of the photographs were so-called "regular mug shots" with the identification number cut off and the photograph of the defendant was a black and white Polaroid photograph of a similar type. Each woman separately viewed the photographs and, without any suggestion made by anyone, identified the photograph of the defendant as a photograph of her assailant. While the assault victims were in the detective bureau room to examine the photographs, Mrs. B noticed the defendant walking past the room in the adjacent hallway and informed one of the detectives of this identification. The court expressly found that she had no idea that the defendant would walk by the

room in which she was seated, that no one told her or suggested to her that he would be there, and that it was by chance and without any plan by the police that she saw him in the hallway outside the detective bureau.

After this preliminary hearing on the defendant's motion, held in the absence of the jury, and after the court had considered the evidence concerning the identification of the defendant by Mrs. B in the New York police station, and what had transpired while both women were examining the photographs in the Stamford police station, the court concluded that "there was a legal identification" made by both women and that the defendant was not deprived of any of his constitutional rights. Thereafter, Mrs. B was permitted to testify before the jury as to her pretrial identifications of the defendant at the New York police station, from the photographs and on seeing the defendant at the Stamford police station.[1] She also identified him in the courtroom as her assailant. Mrs. G identified the defendant in the courtroom as her assailant.

The admissibility of the identification evidence in this case is governed by recent decisions of the United States Supreme Court and, more particu-

---

[1] Absent any constitutional problem of the right to counsel at a pretrial identification, the Connecticut rule has been that the identification of an accused made by a witness prior to the trial under conditions removing suspicion of unfairness or unreliability is admissible in evidence together with all the circumstances under which it was made because such evidence "will be of the utmost aid in determining the trustworthiness of the identification made in the court room" and to exclude it would deprive the court "of the benefit of a class of evidence which has strong testimonial value when weighed in the scales of the common sense of mankind." *State v. Frost*, 105 Conn. 326, 341, 342, 135 A. 446; see note, "Admissibility of evidence as to extrajudicial or pretrial identification of accused," 71 A.L.R.2d 449 and Later Case Service, p. 499.

larly, the decision in the case of *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, which by the decision in *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199, is applicable to cases arising since the latter case was decided on June 12, 1967. See also *Foster* v. *California,* 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402, and *Coleman* v. *Alabama,* 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387. We had recent occasion to discuss the substance and effect of the decision in the *Wade* case in *State* v. *Duffen,* 160 Conn. 77, 273 A.2d 863, cert. denied, 402 U.S. 914, 91 S. Ct. 1397, 28 L. Ed. 2d 657, and *State* v. *Oliver,* 160 Conn. 85, 273 A.2d 867, cert. denied, 402 U.S. 946, 91 S. Ct. 1637, 29 L. Ed. 2d 115; see also *State* v. *Carnegie,* 158 Conn. 264, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455. In the light of these decisions of the United States Supreme Court, the rule is now well settled that a pretrial lineup or confrontation, for the purposes of identification, when the police investigation has reached the accusatory stage, is such a critical step in a criminal prosecution that under the sixth amendment to the United States constitution a suspect is at that time entitled to the assistance of counsel. While the *Wade* case factually involved a defendant under arrest and the defendant James H. Oliver was not under arrest at the time the police in New York arranged for him to pass through the room where Mrs. B was waiting to identify him, the fact of prior arrest is not decisive. The significant constitutional factor is whether at the time of the pretrial identification the relationship between the police and the defendant was "accusatory" or "investigatory." See *Escobedo* v. *Illinois,* 378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977, which is cited in the *Wade* decision. While

there is authority to the contrary, the Court of Appeals for the Second Circuit has specifically applied the *Wade* rule to prearrest situations. *United States v. Davis,* 399 F.2d 948, 952 (2d Cir.) (Friendly, J.). In accord are *United States* v. *Greene,* 429 F.2d 193 (D.C. Cir.); *Long* v. *United States,* 424 F.2d 799 (D.C. Cir.); *Rivers* v. *United States,* 400 F.2d 935 (5th Cir.); *Hayes* v. *State,* 46 Wis. 2d 93, 175 N.W.2d 625; *Thompson* v. *State,* 85 Nev. 134, 451 P.2d 704, cert. denied, 396 U.S. 893, 90 S. Ct. 189, 24 L. Ed. 2d 170; *People* v. *Hutton,* 21 Mich. App. 312, 175 N.W.2d 860. Clearly, the identification of the defendant in the New York police station was not accidental but, on the contrary, was contrived by the police when the investigation had focused on him following a check on the automobile registration, ascertainment that he fitted the description supplied by the first victim of the assaults and the expected arrival of the Stamford police with a warrant for his arrest. Under the rule laid down in the *Wade* case, the court was in error in concluding that the constitutional rights of the defendant were not violated by the identification procedure in New York when he had not been advised of his constitutional rights and afforded the opportunity to secure legal counsel at the time of the identification.

The present case differs somewhat from the situation presented on the appeals in the cases of *State* v. *Duffen,* supra, and *State* v. *Oliver,* supra. The present case involved the admission of evidence to the jury not only of the in-court identification of the defendant by Mrs. B but also evidence presented by the state as to her earlier out-of-court identifications in New York, by the use of photographs and by the accidental viewing at the police station in Stamford. Not only had the defendant moved to

exclude any evidence as to these pretrial identifications by Mrs. B but after that motion was denied he further objected to all that testimony and after it was admitted moved that it be stricken in accordance with his previous motion and then duly excepted to the ruling of the court. In neither the *Duffen* nor *Oliver* cases did the state submit to the jury evidence of the contested pretrial identifications and, in each case, the trial court made a specific finding that the in-court identification was made from the direct memory and recollection of the witness as of the date of the offense charged and not from anything which transpired at the pretrial confrontation. This was the proper procedure under the holding of the *Wade* case. As the court held in the *Wade* case (p. 240), notwithstanding an earlier out-of-court identification which was constitutionally illegal because of the absence of counsel, a subsequent in-court identification is admissible for the jury's consideration where the state has established by clear and convincing evidence that the in-court identification was based on observations of the suspect other than at the proscribed confrontation. In the case at bar, however, at the instance of the state, the court admitted for the consideration of the jury not only the in-court identification of the defendant by Mrs. B but also evidence of her out-of-court identifications of him. Not only was this done without a finding by the court that the state had proved by clear and convincing evidence that the in-court identification was untainted by the confrontation in the city of New York police station in the absence of counsel but, as we understand the decisions of the United States Supreme Court, even such a saving finding is not available to the state where the question relates, as it does in this case, to the admissibility of evi-

dence offered in the first instance by the state of a constitutionally proscribed lineup or pretrial confrontation identification. We understand the rule as now mandated by the United States Supreme Court to be that such evidence must be excluded. *Gilbert* v. *California,* 388 U.S. 263, 272, 273, 87 S. Ct. 1951, 18 L. Ed. 2d 1178; *United States* v. *Wade,* 388 U.S. 218, 240 nn.32, 33, 87 S. Ct. 1926, 18 L. Ed. 2d 1149. As the court said in the *Gilbert* case, supra, 273: "Only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of counsel at the critical lineup. In the absence of legislative regulations adequate to avoid the hazards to a fair trial which inhere in lineups as presently conducted, the desirability of deterring the constitutionally objectionable practice must prevail over the undesirability of excluding relevant evidence." The *Gilbert* case (p. 274) requires a remand for a new trial unless we are " 'able to declare a belief that . . . [admission of the out-of-court identification] was harmless beyond a reasonable doubt.' " In the circumstances of the case at bar we are unable to do so and, accordingly, a new trial must be ordered on the second count of the information charging an indecent assault on Mrs. B.

We refrain from deciding the merits of the defendant's further claims that the court erred in permitting Mrs. B to testify as to her pretrial identification of the defendant on her chance observation of him in the Stamford police station and again from her examination of photographs at that time. In the light of our discussion of the *Wade* case and the holding in the *Gilbert* case, it is doubtful that on a retrial the same problem will again be presented

in the same context—on the submission by the state
to the jury of evidence of the pretrial identifica-
tion.   If, as is likely, the state's evidence is limited
to only an offer of in-court identification, then, we
have noted, the rule of the *Wade* case will be ap-
plicable and under that rule the state will be
afforded the opportunity to endeavor to establish
"by clear and convincing evidence" that the in-court
identification was based on observations of the
defendant other than under constitutionally imper-
missible circumstances.   See also *Powers* v. *State,*
8 Md. App. 487, 261 A.2d 44; *Spears* v. *State,* 253
Ind. 364, 254 N.E.2d 196; *State* v. *Gatling,* 275 N.C.
625, 170 S.E.2d 593.   We also note the absence at
the present time of any definitive ruling from the
United States Supreme Court on the question
whether the holding of the *Wade* case is applicable
to pretrial identification of a suspect by the use of
photographs without the presence of the suspect's
counsel.   In *Simmons* v. *United States,* 390 U.S. 377,
384, 88 S. Ct. 967, 19 L. Ed. 2d 1247, the court de-
clined to prohibit the practice of the common
identification-by-photograph procedure either in the
exercise of its supervisory power "or, still less as a
matter of constitutional requirement."   There the
court said: "Instead, we hold that each case must
be considered on its own facts, and that convictions
based on eyewitness identification at trial following
a pretrial identification by photograph will be set
aside on that ground only if the photographic iden-
tification procedure was so impermissibly sugges-
tive as to give rise to a very substantial likelihood
of irreparable misidentification."   Ibid.   The iden-
tification-by-photograph procedure discussed in the
*Simmons* case, however, antedated the decision of
the *Wade* case and at this time there appears a divi-

sion of authority, not to mention considerable confusion in the cases, as to whether or when a suspect is constitutionally entitled to have counsel present during a pretrial identification by photograph.

Cases appearing to hold that the *Wade* doctrine applies to identifications by photograph include *United States* v. *Zeiler,* 427 F.2d 1305, 1307 (3d Cir.); *Thompson* v. *State,* 85 Nev. 134, 138, 451 P.2d 704 (two judges dissenting); *Commonwealth* v. *Whiting,* 439 Pa. 205, 266 A.2d 738 (two judges dissenting); see also *Cox* v. *State,* 219 So. 2d 762, 765 (Fla. App.), and the concurring opinion in *People* v. *Rowell,* 14 Mich. App. 190, 197–99, 165 N.W.2d 423. Cases holding that the *Wade* doctrine does not apply to identifications by photograph include *United States* v. *Ballard,* 423 F.2d 127, 130–31 (5th Cir.); *United States* v. *Collins,* 416 F.2d 696, 699 (4th Cir.) (one judge dissenting), cert. denied, 396 U.S. 1025, 90 S. Ct. 601, 25 L. Ed. 2d 519; *United States* v. *Robinson,* 406 F.2d 64 (7th Cir.); *McGee* v. *United States,* 402 F.2d 434 (10th Cir.), cert. denied, 394 U.S. 908, 89 S. Ct. 1020, 22 L. Ed. 2d 220; and *People* v. *Lawrence,* 93 Cal. Rptr. 204, 208, 481 P.2d 212 (three judges dissenting). See also the opinion in *United States* v. *Callahan,* 439 F.2d 852, 864 (2d Cir.), which discusses the problem at length although the incident there involved antedated the decisions in *Wade, Gilbert* and *Stovall.* Since there is both no certainty that the problem will arise on the retrial of the present case and the possibility that the United States Supreme Court will have given a controlling decision before the retrial, it is unnecessary for us to decide the issue at this time or go further than to state that, in the absence of a controlling decision to the contrary by the United States Supreme Court, we follow the ruling of the

*Simmons* case for the reasons set forth by the Second Circuit in *United States* v. *Callahan,* supra. See *State* v. *Oliver,* 160 Conn. 85, 91, 273 A.2d 867, cert. denied, 402 U.S. 946, 91 S. Ct. 1637, 29 L. Ed. 2d 115.

As we have noted, the same evidential problem did not arise in connection with the testimony of Mrs. G, who did not testify to any identification of the defendant aside from her observations of him at the time of the assault alleged in the first count of the information and her in-court identification. Nevertheless, we are constrained to hold that the circumstances require that the defendant be afforded a new trial on the first count of the information alleging an indecent assault on her.

We find no error in the preliminary ruling by the court which denied the defendant's motion for separate trials on the two counts in the light of the circumstances as they were then before the court. By rule and by statute, "[w]henever two or more cases are pending at the same time against the same party in the same court for offenses of the same character, counts for such offenses may be joined in one information unless the court orders otherwise." Practice Book § 492; General Statutes § 54-57. "The matter lies within the discretion of the trial court and the exercise of that discretion cannot be interfered with unless it has been manifestly abused." *State* v. *Bradley,* 134 Conn. 102, 109, 55 A.2d 114; see also *State* v. *Silver,* 139 Conn. 234, 240, 93 A.2d 154; *State* v. *Kemp,* 126 Conn. 60, 84, 9 A.2d 63. There is the obvious economy of a single trial and, furthermore, the defendant, if successful, will have wiped the slate clean and will not have to face a series of prosecutions, a conviction in any one of which could result in a long sentence. "The discre-

tion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less advantageous to the defendant. . . . The test is whether substantial injustice will result to the defendant if the charges are tried together." *State* v. *Silver,* supra. The most obvious example of possible prejudice is that, when the crimes, near in time, place and circumstance, are so similar although legally unconnected, as in the present case, there is danger that the jury will use the evidence of one crime to convict the defendant of the other crime. See *Drew* v. *United States,* 331 F.2d 85, 89 (D.C. Cir.); 1 Wigmore, Evidence (3d Ed.) § 194. This is precisely the same reason that evidence of other crimes is inadmissible except in certain situations not present in this case. *State* v. *Holliday,* 159 Conn. 169, 172, 173, 268 A.2d 368; 1 Wharton, Criminal Evidence (12th Ed.) §§ 232–248. This hazard alone is not sufficient to justify a severance, for otherwise consolidation could seldom be permitted. Accordingly, if the evidence as to the two crimes is uncomplicated and kept carefully separated by the attorneys, there is no problem in consolidation. *Dunaway* v. *United States,* 205 F.2d 23, 27 (D.C. Cir.); *United States* v. *Lotsch,* 102 F.2d 35, 36 (2d Cir.), cert. denied, 307 U.S. 622, 59 S. Ct. 793, 83 L. Ed. 1500.

In the case at bar, where it was not contested that the two separate assaults occurred but the identity of the assailant was a critical issue, it cannot be held beyond a reasonable doubt that Mrs. B's improperly admitted testimony identifying the defendant as being in the immediate vicinity of the crime against Mrs. G and as the perpetrator of a similar crime on Mrs. B was not prejudicial to the de-

fendant in the jury's determination of the identity of Mrs. G's assailant. Under the circumstances, we are constrained to hold that because there was a substantial likelihood that the inadmissible evidence from Mrs. B was a substantial factor in the decision of the jury finding the defendant guilty of the assault on Mrs. G, he must be afforded a new trial on both counts of the information.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.