## STATE OF CONNECTICUT *v.* JOHN W. MALLETTE

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued January 6—decided February 3, 1970

*William J. Lavery,* special public defender, for the appellant (defendant).

*Joseph T. Gormley, Jr.,* state's attorney, for the appellee (state).

KING, C. J. The defendant has appealed from a conviction for armed robbery (General Statutes [Rev. to 1968] § 53-14), on the sole claim that his constitutional rights were denied in the conduct of a lineup in which he was identified as the holdup man by the victim, a Mrs. Helen Tirrell, prior to trial, and that evidence of this pretrial identification, as well as her in-court identification, was erroneously admitted.

Certain of the state's claims of proof may be rather briefly summarized: On August 29, 1966, John Morrow, who testified for the state at the trial, left New York at about 2 o'clock in the afternoon to drive to Connecticut in his 1961 blue Chrysler car bearing Pennsylvania registration plates. He was accompanied by the defendant, who worked with Morrow in New York. Shortly after 10 o'clock that night the two came to the apartment of Roberta Samek, in Danbury, where Roger Redman was then present. Roberta Samek asked Morrow and the defendant, who had been a friend of hers, to leave, and they left less than five minutes after their arrival. The defendant was an escaped convict wanted by the police, and upon his departure from the apartment Roberta Samek and Redman informed the Danbury police that the defendant was then in Danbury riding in a 1961 blue Chrysler bearing Pennsylvania plates.

After leaving the apartment, the two drove around and then stopped at a store. The defendant took a pellet pistol which Morrow had seen in his car but

which did not belong to him, put it inside his (the defendant's) shirt and told Morrow he was going to hold up the store. The defendant then entered the store with the pistol. When he returned he handed Morrow about $130. Morrow did not know what happened in the store.

In the early morning of August 30, Lieutenant Michael R. DelVecchio and other members of the Trumbull police department stopped the 1961 blue Chrysler with Pennsylvania plates on the Merritt Parkway, in Trumbull. It was being operated by Morrow, and the defendant was a passenger. A hand gun was found under the passenger's front seat, and a search of the defendant disclosed $125.

Prior to taking evidence before the jury, the court held a hearing on a motion to suppress "any testimony given by a Helen Tirrell". She was the victim of an armed robbery on the night of August 29, 1966, in her store in Sandy Hook, a village near Danbury. This motion was denied, and on the trial questions asked of Mrs. Tirrell bearing on her identification of the defendant were admitted over the objection and exception of the defendant.

The state's claims of proof as to the robbery itself were that, at about 11 o'clock on the night of August 29, 1966, Helen Tirrell was working in her grocery store in Sandy Hook; that a young man in his early twenties and wearing a green T shirt entered the store and asked for two packs of cigarettes; that Mrs. Tirrell took down the cigarettes and turned to get matches; that, when she faced the man again, he had a dull black gun in his hand and said, "Give me the money"; that there was no one in the store at the time but the holdup man and Mrs. Tirrell; that she handed over to him approximately $200 in bills; that he then told her to get down, which she did by duck-

ing behind the counter; that after the robber left she stayed behind the counter until someone came into the store, when she called the police; and that she closed the store and went home about midnight.

The claims of proof of the defendant were that Morrow and he, after leaving Roberta Samek's apartment, then drove to Patterson, New York, then to New Milford, Connecticut, and then to Trumbull, where they were apprehended by the police. The defendant denied he ever went to Mrs. Tirrell's store.

The evidence with regard to the lineup, both as developed in the preliminary hearing on the motion to suppress and in Mrs. Tirrell's testimony at the trial, admitted over the defendant's objection and exception, disclosed no discrepancies and need not be separately summarized but was in substance that, at about 12:30 a.m. of the night of the robbery, two police officers from Trumbull came to Mrs. Tirrell's home to drive her to Trumbull to identify a fellow; that, shortly after the defendant had been brought to the Trumbull police station, he was placed in a lineup composed of himself, Morrow and two Trumbull police officers, who were also dressed in civilian clothing. Before she had gotten completely into the room where the lineup was conducted, Mrs. Tirrell identified the defendant through the door as the man who had held her up. She identified him again after she got into the room where the lineup was being held as being the third in the line. Soon after, Mrs. Tirrell was taken from the room, the lineup was reformed, and the positions of the four men changed. Upon being returned to the room, Mrs. Tirrell again identified the defendant in his new position in the lineup.

Finally, during the trial, over the defendant's ob-

jection and exception, Mrs. Tirrell again positively identified the defendant.

During the pretrial lineup the defendant was not represented by counsel, said nothing while he was in the lineup and did not expressly waive any right to counsel. See note, 18 L. Ed. 2d 1433, subdivision 8. The defendant claims that under the rule laid down in *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, and in *Gilbert* v. *California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178, this lack of counsel at the lineup vitiated not only evidence as to any identification in the pretrial lineup *(Wade,* p. 236) but also the in-court identification unless the state can "establish by clear and convincing evidence" that the in-court identification was based on observations of the suspect other than the lineup identification. *United States* v. *Wade,* supra, 240; *Gilbert* v. *California,* supra, 271; see note, 18 L. Ed. 2d 1431 § 6, subdivision (d).

This claim is without merit because the pretrial lineup was held on August 30, 1966, whereas the *Wade* and *Gilbert* rule, after full consideration, was made applicable only to lineups conducted after June 12, 1967, the date of the decision in each case. *Stovall* v. *Denno,* 388 U.S. 293, 300, 87 S. Ct. 1967, 18 L. Ed. 2d 1199; *State* v. *Carnegie,* 158 Conn. 264, 268, 271, 259 A.2d 628; see note, 18 L. Ed. 2d 1432 § 6, subdivision (e).

The defendant has also made the claim in his brief that even if the rule of *Wade* and *Gilbert* as to the right to counsel is not retroactively applicable to the present case, the conduct of the pretrial lineup was so unnecessarily suggestive and conducive to irreparable mistaken identification as to amount to a denial of due process of law. The validity of such a claim depends on the totality of the surrounding

circumstances. *Stovall* v. *Denno,* supra, 302; *State* v. *Carnegie,* supra, 269.

The defendant in his brief assigns three main infirmities in the pretrial lineup procedure. One is that it was held within about two hours after the holdup took place, although, as he claims, there was no particular need of haste. It is his claim that Mrs. Tirrell was upset by the holdup and should have been given more time to recover her composure. We find no merit in this claim. While Mrs. Tirrell quite naturally was emotionally disturbed by the events of the evening, there is nothing to indicate that this affected her accuracy of identification.

The second claimed infirmity was that the defendant was only about five feet tall and, as probably the shortest person in the lineup, would be identified as the holdup man in any event. As already pointed out, the lineup consisted of four men, one of whom was Morrow, who was somewhat taller than the defendant, and the other two were police officers whose height did not appear. The defendant now asks us to assume that they were at least five feet six or seven inches tall, since, as he claims, that is the minimum height requirement for service on a police force. Actually, we know of no such minimum height requirement, and, even if there was one, we could not take judicial notice of it unless it was properly called to our attention. *Manafort Bros., Inc.* v. *Kerrigan,* 154 Conn. 112, 115, 222 A.2d 218. If the defendant was only about five feet tall, and this seems to be substantially undisputed, we may assume that he was probably shorter than the three others in the lineup. But we cannot find, especially under the totality of circumstances in the present case, that the pretrial identification was likely to be erroneous or the product of suggestion. There was no reason to

believe that Mrs. Tirrell would identify, as the robber, the shortest person in any lineup regardless of any other physical characteristics such as color of hair, facial features, age, build, and the multitude of minute details in appearance which bring about recognition in the ordinary affairs of life. Certainly a prompt identification, other things being equal, is more likely to be accurate than one which is made long after a holdup. It would be difficult to assemble a group of male adults as short as five feet. And, of course, the defendant would criticize the lineup even more severely if boys, instead of adults, had been used to obviate any possible height differences.

The third claimed infirmity hardly justifies comment. It was that, since Mrs. Tirrell was taken to the Trumbull station in a police cruiser, there was opportunity to influence her identification of the defendant. Obviously there was opportunity. But there was nothing to indicate that that opportunity was utilized.

As a matter of common sense, it is highly improbable that a woman with sufficient intelligence to run a store would be unable to recognize a robber who, unmasked, had held her up at gunpoint about two hours before.

In short, we find nothing to indicate that the pretrial lineup was unfair, was unduly suggestive or conducive to erroneous identification, or in any other respect was violative of due process. *State* v. *Carnegie,* 158 Conn. 264, 269, 259 A.2d 628.

Since there was no invalidity in the pretrial lineup, the claim that Mrs. Tirrell's in-court identification was the product of an illegal pretrial identification is groundless. Ibid.

There is no error.

In this opinion the other judges concurred.