## STATE OF CONNECTICUT *v.* STEVEN P. DUFFEN

ALCORN, C. J., HOUSE, COTTER, THIM and RYAN, Js.

Argued October 6—decided November 23, 1970

*Domenick J. Galluzzo,* assistant public defender, for the appellant (defendant).

*Joseph T. Gormley, Jr.,* state's attorney, for the appellee (state).

HOUSE, J. The decisive issue on this appeal is the correctness of the decision of the court overruling an objection by the defendant to an in-court identification of the defendant by the victim of a robbery as the man who had held him up at gunpoint and robbed him of about $4000 in cash and $6000 in checks which he was about to deposit in a bank night depository vault.

The state offered evidence to prove that on February 15, 1967, James Wakula was employed by a supermarket in Norwalk and that at about 10 p.m., having totaled up the day's receipts, he took them in his car to deposit them in the night-depository vault of a bank which was only about 200 yards from the supermarket. As he arrived at the bank a man approached the driver's side of the car with a gun in his hand. He was not masked. He got into the driver's seat, drove the car to the rear of a nearby gasoline service station, took the deposit bag, let Wakula out of the car and drove off, informing Wakula that the car would be left at the top of the hill. Near where Wakula's car was subsequently found, about 2000 feet from the supermarket, a green 1962 Pontiac owned by another employee of the supermarket and bearing Connecticut registration TN 102 was seen at approximately the time of the robbery. The manager of a Hartford store testified that on the day before the robbery he had observed Duffen leaving that store in what he described as a blue Pontiac with Connecticut registration TN 102 and that at that time the defendant was wearing a red goatee. Wakula in reporting the robbery described the gunman as six feet tall,

weighing about 180 pounds, with a reddish goatee, a light complexion and a prominent nose. Three days after the holdup, Wakula, upon being shown by a state police officer photographs of nine individuals, identified a photograph of the defendant as his assailant.

During the trial, after he had testified to the events surrounding the robbery, Wakula was asked if the man who had robbed him was in the court-room. The defendant objected to the question and the jury were excused. The defendant thereupon made a motion "akin to a motion to suppress", the purport of which was that any identification of the defendant by Wakula should be excluded upon the authority of *United States* v. *Wade,* 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, and *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199. The objection was predicated on two grounds. The first concerned Wakula's identification of the defendant from the group of photographs shown him by the state police shortly after the robbery. Since the original objection to the propriety of this identification by photograph has been abandoned on this appeal, it is unnecessary to consider it except to note that the court overruled the objection made on this ground.

The second ground of objection and primary basis of this appeal concerns an incident which happened just before the defendant was arraigned in the Circuit Court. Before overruling the objec-tion the court held a full hearing in the absence of the jury and made a finding as to this ruling. From that finding it appears that in April, 1968, Duffen was returned to Connecticut from custody in New Jersey for arraignment in the Circuit Court. The trooper who had him in custody stopped off at the

Westport state police barracks en route to the Circuit Court in Norwalk and during this stop Duffen was served coffee in the dining room of the barracks. Wakula had been asked to stop at the barracks on his way to court on the day of the arraignment and he also was served coffee and sat at the same table with state troopers and the defendant but there was no conversation between them nor any suggestion by anyone as to the identity of the defendant. The court expressly found that the defendant was not brought by the police to the barracks in order that Wakula could look at him and this finding, fully supported by the evidence, has not been attacked. Later the same day at the Circuit Court Wakula identified Duffen as the man who had robbed him.

Prior to the defendant's objection to Wakula's in-court identification of the defendant, Wakula had already testified in the presence of the jury that as he arrived at the bank on the night of the robbery the lighting was good, with lights on either side of the front door, that the light inside his automobile went on when the unmasked gunman opened the door, asked him to slide over and sat in the driver's seat and that the rear of the gasoline station to which the gunman drove the car to let Wakula out was well illuminated by lights from the station and the parking lot. Wakula further testified at the evidential hearing in the absence of the jury that his identification of the defendant was made from his direct memory and recollection of the holdup and the personal characteristics and facial traits of the defendant as of the date of the holdup and not from anything that happened at the state police barracks. The court so found and accordingly overruled the objection and permitted the in-court identification, indicating that the circumstances leading to the

identification were proper for the consideration of the jury in assessing the weight it would give to the identification evidence.

In *State* v. *Carnegie*, 158 Conn. 264, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455,[1] we had occasion to discuss the recent cases in which the United States Supreme Court has ruled on identification procedures where a constitutional claim has been raised as to the admissibility of identification evidence and a claim for its exclusion pressed, as in the present case, on constitutional grounds. As we there noted, *United States* v. *Wade,* supra, and *Gilbert* v. *California,* 388 U.S. 263, 87 S. Ct. 1951, 18 L. Ed. 2d 1178, have held that a pretrial lineup for purposes of identification is such a critical stage in a criminal prosecution that under the sixth amendment a suspect is at that time entitled to the aid of counsel. In addition to this possible constitutional basis for exclusion, identification predicated upon a pretrial confrontation which is unnecessarily suggestive and conducive to an irreparably mistaken identification is subject to exclusion if, in the totality of the circumstances, the pretrial confrontation amounted to a violation of due process of law. *Foster* v. *California,* 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402; *Stovall* v. *Denno,* supra; see also *Coleman* v. *Alabama,* 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387. The rule enunciated in the *Wade* case did not govern the decision in *State* v. *Carnegie,* supra, since that questioned identification took place prior to the *Wade* decision. In *Stovall* v. *Denno,* supra, decided on June 12, 1967, the United States Supreme Court held that the *Wade* rule was to be

---

[1] For subsequent unsuccessful federal habeas corpus proceedings instituted by the defendant see *United States ex rel. Carnegie* v. *MacDougall,* 422 F.2d 353 (2d Cir.).

applied prospectively from that date. Since the contested state police barracks confrontation in the present case occurred subsequent to the decision in the *Stovall* case, the principles enunciated in *Wade* were then operative.

It is unnecessary to decide whether the unplanned pretrial incident of the meeting of Wakula and the defendant at the police barracks was such a lineup or confrontation as is, in the absence of defendant's counsel, constitutionally proscribed by the *Wade* rule. As against the affirmative contention by the defendant, the state cites such cases as *Powers* v. *State,* 8 Md. App. 487, 261 A.2d 44, and *United States* v. *Scully,* 415 F.2d 680 (2d Cir.), the express and unchallenged finding by the trial court that the defendant was not brought to the barracks by the police in order that Wakula could look at him, and the evidence that the meeting was entirely a coincidence. See also *Spears* v. *State,* 253 Ind. 364, 254 N.E.2d 196; *State* v. *Gatling,* 275 N.C. 625, 170 S.E.2d 593. Whether or not the meeting was a constitutionally impermissible confrontation under the *Wade* decision or in the light of "the totality of the circumstances" as prescribed in *Foster* v. *California,* supra, and *Stovall* v. *Denno,* supra, we conclude that the in-court identification was properly admitted. The trial court followed proper procedure in holding a preliminary evidential hearing in the absence of the jury to determine whether the proffered in-court identification was based on or tainted by an unconstitutional confrontation. Having concluded after such a hearing that the evidence was admissible the court then allowed the in-court identification into evidence before the jury. In order for the jury to assess the weight which they would give to the identification evidence the court thereafter permitted

the defendant on cross-examination to elicit testimony concerning the chance meeting at the police barracks. See *United States* v. *Broadhead,* 413 F.2d 1351 (7th Cir.). It likewise permitted the jury to hear testimony from Wakula as to his opportunity to observe his assailant at the time of the holdup and the existing lighting conditions and Wakula's testimony that his in-court identification was based on his recollection of the gunman and his facial characteristics from observation of him on the night of the crime. "The reliability of properly admitted eyewitness identification, like the credibility of the other parts of the prosecution's case is a matter for the jury." *Foster* v. *California,* supra, 442 n.2.

As the court stated in the *Wade* case, 388 U.S. 218, 240, 87 S. Ct. 1926, 18 L. Ed. 2d 1149: "Where, as here, the admissibility of evidence of the lineup identification itself is not involved, a *per se* rule of exclusion of courtroom identification would be unjustified." It noted (p. 241) that "the proper test to be applied in these situations is that quoted in *Wong Sun* v. *United States,* 371 U.S. 471, 488, [83 S. Ct. 407, 9 L. Ed. 2d 441], 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" It further stated: "Application of this test in the present context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to lineup, failure to identify the defendant on a prior

occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider those facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." Accordingly, mere proof of the absence of counsel at a pretrial lineup is not sufficient reason to exclude a subsequent in-court identification "without first giving the Government the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." *United States* v. *Wade,* supra, 240.

The record discloses that the trial court considered both the "totality of the circumstances" and the absence of any counsel at the coffee-table meeting at the police barracks and properly applied the tests prescribed in *Wong Sun* v. *United States,* supra, and *United States* v. *Wade,* supra. See also such cases as *United States* v. *Terry,* 422 F.2d 704 (D.C. Cir.); *United States* v. *Gregg,* 414 F.2d 943 (7th Cir.); *In re Hill,* 71 Cal. 2d 997, 458 P.2d 449; *Commonwealth* v. *Robinson,* 355 Mass. 620, 246 N.E.2d 669; *State* v. *DeLuca,* 448 S.W.2d 869 (Mo.). Of particular significance, of course, was Wakula's own testimony that his identification in court was based on his direct memory and recollection of the holdup and the personal characteristics and facial traits of the defendant as of the date of the holdup and not from anything that happened at the barracks; the significant opportunity he had to observe the defendant at close range in well-lighted areas; his first description of the defendant to the investigating police which accurately described the defendant's appearance, including the distinctive goatee; and his identification of the photograph of the defendant three days after the holdup.

The record and the evidence contained in the appendix to the state's brief more than amply support the finding of the court and its ruling permitting the in-court identification of the defendant as the man who committed the robbery.

It follows that there was ample evidence to support the verdict of guilty in this case.

There is no error.

In this opinion the other judges concurred.