STATE OF CONNECTICUT *v.* ISAAC DAVID MIDDLETON, JR.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

602

Argued February 4—decision released April 13, 1976

*Howard T. Owens, Jr.,* for the appellant (defendant).

*Eugene J. Callahan,* assistant state's attorney, with whom, on the brief, was *Donald A. Browne,* state's attorney, for the appellee (state).

HOUSE, C. J.   The defendant was charged with robbery in the first degree in violation of § 53a-134 (a) (2) of the General Statutes.   A jury found him guilty and the court, *Tierney, J.,* rendered judgment sentencing him to not less than eight nor more than sixteen years in the state correctional institution at Somers.   From this judgment the defendant has appealed, assigning and briefing

error in the court's denial of his motion to dismiss the information for lack of probable cause for his arrest and in admitting testimony regarding the identification of the defendant by the victim of the robbery, which procedure the defendant claims violated his rights to due process of law and to counsel. We consider the claims in that order.

The crime for which the defendant was arrested and charged was a felony. General Statutes § 53a-25. The arrest was not made pursuant to an arrest warrant, "but a police officer may lawfully arrest without previous complaint or warrant any person whom he has reasonable grounds to believe has committed or is committing a felony. *State* v. *Cobuzzi,* 161 Conn. 371, 376, 288 A.2d 439, cert. denied, 404 U.S. 1017, 92 S. Ct. 677, 30 L. Ed. 2d 664; *State* v. *Wilson,* 153 Conn. 39, 41, 212 A.2d 75; General Statutes § 6-49." *State* v. *Love,* 169 Conn. 596, 599, 363 A.2d 1035. As we observed in the *Cobuzzi* case and reiterated in the *Love* case: " ' "[R]easonable grounds to believe" is to be equated with probable cause. *Henry* v. *United States,* 361 U.S. 98, 100, 102, 80 S. Ct. 168, 4 L. Ed. 2d 134; *State* v. *Wilson,* 153 Conn. 39, 41, 212 A.2d 75. "In dealing with probable cause . . . , as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar* v. *United States,* 338 U.S. 160, 175, 69 S. Ct. 1302, 93 L. Ed. 1879; *State* v. *Wilson,* supra. In order to establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict. *Draper* v. *United States,* 358 U.S. 307, 311, 79 S. Ct. 329, 3 L. Ed. 2d 327; *State* v. *Sweeney,* 157 Conn. 485, 488, 255 A.2d 622; *State* v. *Towles,* 155

Conn. 516, 520, 235 A.2d 639; *State* v. *Wilson,* supra, 42. Probable cause exists when the facts and circumstances within the knowledge of the officer and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that a felony has been committed. *Beck* v. *Ohio,* 379 U.S. 89, 91, 85 S. Ct. 223, 13 L. Ed. 2d 142; *Brinegar* v. *United States,* supra; *Carroll* v. *United States,* 267 U.S. 132, 162, 45 S. Ct. 280, 69 L. Ed. 543; *State* v. *Towles,* supra; *State* v. *Elliott,* 153 Conn. 147, 152, 215 A.2d 108; *State* v. *Wilson,* supra.' "

With this test in mind, we turn to the facts disclosed by the evidence referred to in the briefs. On November 24, 1973, at approximately 3:45 p.m., while there was still daylight, Frank Milazzo, the proprietor of Milazzo's Liquor Store, at 173 South Main Street, Norwalk, was alone, standing behind the counter in the rear of his store, placing money in the cash register. A man entered the store, walked to the counter, pointed a revolver at Milazzo, and demanded and was given the contents of the register. The robber ordered Milazzo into the back room and left the store. Milazzo then went to the sidewalk in front, saw the robber and shouted, whereupon the robber turned and fired two shots in his direction. The robber entered a tan Lincoln automobile and left the scene. Milazzo recognized the car and the driver, Willis Darden, whom he had known for some years and who lived in Roodner Court, a housing project located not far from the liquor store.

The police responded quickly and Milazzo gave them a description of the robber as a black male, 5 feet 9 inches to 6 feet tall, about 180 pounds, with

moustache, long porkchop sideburns, and wearing a blue jacket and hat. Approximately fifteen minutes after the robbery, about 4 p.m., the police and Milazzo arrived at building number 16 Roodner Court, saw Darden's tan Lincoln parked there and found the hood to be warm. Approximately twenty minutes later, while it was still daylight, a police officer stationed near the rear corner of the building saw the defendant run around the front corner of the building. The defendant matched the physical description of the robber, but had no hat and was wearing a tan coat. Upon seeing the officer, the defendant stopped, spun around, fell to his knees, got up, and after a classic foot chase was apprehended and arrested.

A substantial factor to be considered in the officer's determination that there was probable cause to arrest the defendant was his flight from the police officer. See *State* v. *Wilson,* 153 Conn. 39, 43, 212 A.2d 75; *Smith* v. *United States,* 295 A.2d 64 (D.C. App.), cert. denied, 411 U.S. 951, 93 S. Ct. 1932, 36 L. Ed. 2d 414; *Price* v. *State,* 227 Md. 28, 175 A.2d 11. The defendant's reliance to the contrary on *State* v. *Mayell,* 163 Conn. 419, 425, 311 A.2d 60, is misplaced, for that case, in which there was no direct evidence of flight, recognized that if flight were proved, it would have probative value of consciousness of guilt. In light of the facts which we have summarized, it is clear that the arresting officers had sufficient information to warrant a man of reasonable caution to entertain the belief that a felony had been committed by the defendant and thus to make the arrest. *State* v. *Love,* supra; *State* v. *Wilson,* supra. There was no error in the court's ruling denying the defendant's motion to dismiss the information.

The defendant's final two claims of error arise from his post-arrest identification. Immediately following the arrest, the police officers handcuffed the defendant and drove directly to the liquor store which had been robbed. They took the defendant, still in handcuffs, inside the store and asked Milazzo if the defendant was the robber. Milazzo noted that the defendant was wearing a different coat from the one he wore during the robbery but positively identified him as the robber. Milazzo's earlier description of the robber, based on his observation across the store counter for several minutes in the well-lighted store, was a generally accurate one in fitting the defendant and included the distinctive long bushy sideburns.

At the trial, Milazzo made a positive in-court identification of the defendant after a preliminary evidentiary hearing in the absence of the jury, held because of the defendant's objection to the proffered identification testimony. As a result of that hearing, the court decided that the witness' positive identification of the defendant was based on his ample opportunity for observation during the robbery confrontation, and the in-court identification was allowed. Milazzo also related to the jury the events at the post-arrest identification of the defendant in his store.

It is the defendant's claim that the post-arrest identification violated the defendant's rights under the due process clause of the fourteenth amendment to the constitution of the United States in that it was impermissibly suggestive and gave rise to a substantial likelihood of irreparable misidentification. One-man confrontations do not per se constitute a denial of due process of law. *Simmons* v. *United States,* 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed.

2d 1247; *Biggers* v. *Tennessee,* 390 U.S. 404, 88 S. Ct. 979, 19 L. Ed. 2d 1267, rehearing denied, 390 U.S. 1037, 88 S. Ct. 1401, 20 L. Ed. 2d 298 (conviction reaffirmed on second review December 6, 1972); *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199; *State* v. *Carnegie,* 158 Conn. 264, 269, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455. A determination as to whether there has been a violation of due process rights in an identification procedure " 'depends on the totality of the circumstances surrounding it.' *Stovall* v. *Denno,* 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 1199." *State* v. *Hafner,* 168 Conn. 230, 235, 362 A.2d 925, and the cases cited therein.

"[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil* v. *Biggers,* 409 U.S. 188, 199, 93 S. Ct. 375, 34 L. Ed. 2d 401; *State* v. *Duffen,* 160 Conn. 77, 83, 273 A.2d 863, cert. denied, 402 U.S. 914, 91 S. Ct. 1397, 28 L. Ed. 2d 657. Relevant circumstances in the present case include the excellent opportunity of the victim to observe the unmasked robber across the counter, the victim's actions during and after the holdup, the accuracy of his physical description of the robber, the positive identification of the defendant at the confrontation, and the brief forty minutes to one hour which elapsed between the commission of the crime and the confrontation.

"We have no doubt that the identification procedure used by the police in this case was inherently

suggestive, and significantly so. Without question, almost any one-to-one confrontation between a victim of crime and a person whom the police present to him as a suspect must convey the message that the police have reason to believe him guilty. The psychological factors that have been so thoroughly discussed by scholars and judges create a real risk of misidentification in such circumstances." *United States ex rel. Kirby* v. *Sturges,* 510 F.2d 397, 403 (7th Cir.). On the other hand, we must also consider that prompt on-the-scene confrontations tend under some circumstances to ensure accuracy. Id., 404; *Bates* v. *United States,* 405 F.2d 1104, 1106 (D.C. Cir.). As we noted in a similar instance of a store robbery in *State* v. *Mallette,* 159 Conn. 143, 149, 267 A.2d 438: "Certainly a prompt identification, other things being equal, is more likely to be accurate than one which is made long after a holdup" and "[a]s a matter of common sense, it is highly improbable that a [man] with sufficient intelligence to run a store would be unable to recognize a robber who, unmasked, had held [him] up at gunpoint about two hours before." Further, the benefits of promptness not only aid reliability but permit a quick release of an innocent party if there is no positive identification and allow the police to resume the investigation with a minimum of delay. *Washington* v. *United States,* 334 A.2d 185 (D.C. App.).

We conclude that the totality of circumstances in this case were not "so unnecessarily suggestive and conducive to irreparable mistaken identification that he [the defendant] was denied due process of law" by testimony concerning the post-arrest confrontation. *Neil* v. *Biggers,* supra, 201; *Stovall* v. *Denno,* supra, 301; *United States* v. *Jones,* 517 F.2d

176, 179 (D.C. Cir.); *State* v. *Hafner,* supra, 239; *State* v. *Mallette,* supra; *Washington* v. *United States,* supra; *Commonwealth* v. *Turner,* 454 Pa. 520, 314 A.2d 496.

Furthermore, the preliminary evidentiary hearing established to the satisfaction of the trial court that Milazzo had an independent recollection of the accused apart from the post-arrest confrontation. Under the circumstances, we can find no error in the conclusion of the court that the state satisfied its burden of showing this independent recollection by clear and convincing evidence. *State* v. *Guthridge,* 164 Conn. 145, 156, 318 A.2d 87, cert. denied, 410 U.S. 988, 93 S. Ct. 1519, 36 L. Ed. 2d 186; *State* v. *Oliver,* 160 Conn. 85, 90, 273 A.2d 867, cert. denied, 402 U.S. 946, 91 S. Ct. 1637, 29 L. Ed. 2d 115; *State* v. *Duffen,* 160 Conn. 77, 83, 273 A.2d 863.

The defendant's final contention that an on-the-scene, one-to-one confrontation immediately following arrest violated his right to assistance of counsel guaranteed by the sixth amendment to the constitution of the United States is not well taken. The police, having captured a fleeing suspect, not far from the scene of the crime, quite properly wanted to verify further the belief that the captured suspect was indeed the robber before formal proceedings were initiated. "The initiation of judicial criminal proceedings is far from a mere formalism. It is the starting point of our whole system of adversary criminal justice. For it is only then that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law. It is

this point, therefore, that marks the commencement of the 'criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable. See *Powell* v. *Alabama,* 287 U.S. [45, 66–71, 53 S. Ct. 55, 77 L. Ed. 158]; *Massiah* v. *United States,* 377 U.S. 201 [84 S. Ct. 1199, 12 L. Ed. 2d 246]; *Spano* v. *New York,* 360 U.S. 315, 324 [79 S. Ct. 1202, 3 L. Ed. 2d 1265] (Douglas, J., concurring). In this case we are asked to import into a routine police investigation an absolute constitutional guarantee historically and rationally applicable only after the onset of formal prosecutorial proceedings. We decline to do so." *Kirby* v. *Illinois,* 406 U.S. 682, 689, 92 S. Ct. 1877, 32 L. Ed. 2d 411. The review we have already undertaken on due process grounds "strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime." Id., 691.

There is no error.

In this opinion the other judges concurred.