### John M. WILLIN

v.

**Carl R. AJELLO, Attorney General of the State of Connecticut, and Terry S. Capshaw, Director, Connecticut Department of Adult Probation.**

Civ. A. No. H 79–241.

United States District Court,
D. Connecticut.

Sept. 4, 1980.

Thomas D. Clifford, Robert L. Wyld, Shipman & Goodwin, Hartford, Conn., for petitioner.

Bernard D. Gaffney, Asst. State's Atty., State of Conn., Hartford, Conn., for respondents.

## MEMORANDUM OF DECISION ON PETITION FOR WRIT OF HABEAS CORPUS

JOSÉ A. CABRANES, District Judge:

Petitioner John M. Willin was convicted by a jury in the Superior Court of the State of Connecticut for Hartford County (Douglass B. Wright, J., presiding) of assaulting 13-year old Michael Jordan as Jordan bicycled home from football practice one evening. The jury heard evidence that 10 minutes after the assault, the police showed the petitioner to Jordan and Jordan identified Willin as his assailant. Jordan repeated his identification of Willin in the courtroom at trial.

After the Supreme Court of Connecticut affirmed Willin's conviction, Willin filed a petition for habeas corpus in this court. In his petition, Willin asserts that the admission of Jordan's identification testimony at trial violated his due process rights because

the initial identification procedure was overly suggestive and unreliable. He also argues that even if the admission of the identification evidence was not unconstitutional, his conviction should be set aside because Judge Wright failed to give the jury adequate instructions regarding its use.

For the reasons set forth below, I conclude that: (1) the identification was sufficiently reliable to permit the admission at trial of the challenged evidence and (2) the trial court's jury instructions were constitutionally adequate. Accordingly, the petition for writ of habeas corpus is denied.

## A. Factual Background

The background facts are not in dispute at this stage of the proceedings; the following description of relevant events is drawn from the opinion of the Supreme Court of Connecticut in State v. Willin, 177 Conn. 248, 413 A.2d 829 (1979).

Shortly after 8 p. m. on October 28, 1975, Michael Jordan, who had just finished "pony league" football practice at Mill Pond Park in Newington, Connecticut, was bicycling home. His route took him past the parking lot of the Newington Town Hall, which is adjacent to the park, and onto a deserted path across the parking lot from Mill Pond Park. Jordan testified that when he reached the path, he heard footsteps behind him, looked back and saw a man wearing a purple jacket and a white rag or towel around his neck, running toward him. The man overtook Jordan, pulled him from his bicycle, told him "Don't worry. I won't hurt you," and dragged Jordan toward a bushy, wooded area. Jordan, who put up a struggle, broke free and, after a quick backward glance at his assailant, ran back to the nearby park, where he located his football coach (an off–duty police officer) and a police officer who was on duty in the area. He recounted the incident to them and described his assailant's clothing, hair color and height. The police conveyed this information by radio to the police dispatcher. A few minutes later, police picked up Willin, who was jogging in the vicinity of the assault, and who matched the description given them by Jordan.

Jordan's initial identification of Willin took place a short time later in the Town Hall parking lot. Willin was placed in the rear seat of a police cruiser. When Jordan arrived at the parking lot, one of the officers told him that they had found a man who matched his description and that they wanted Jordan to take a look at the man and determine whether he was in fact the assailant. Jordan observed Willin from a distance of two or three feet and identified him as the man who had attacked him no more than 10 minutes earlier.

## B. Procedural History

Willin was tried on March 4–11, 1977 before a jury in the Superior Court for Hartford County. After a pretrial hearing conducted on the morning of the first day of trial, Judge Wright denied Willin's motion to exclude identification evidence based on the allegedly suggestive identification procedure. The case then went to the jury, which heard testimony from Jordan and the attending officers about Jordan's identification of Willin in the Town Hall parking lot. Jordan also identified Willin as his assailant in the course of his testimony at trial.

On March 11, 1977, the jury found Willin guilty of assault in the third degree, Conn. Gen. Stat. § 53a–61(a)(1), and not guilty of unlawful restraint in the first degree, Conn. Gen. Stat. § 53a–95. Judge Wright sentenced Willin to one year in prison, with execution of the sentence suspended, and a two–year term of probation. As a condition of probation, Willin was to submit to psychiatric examination and any treatment deemed necessary by the evaluating psychiatrist. His conviction was affirmed on appeal by the Supreme Court of Connecticut. State v. Willin, supra.[1]

1. Willin has not yet begun to serve his sentence of probation. The state court stayed execution of the sentence during the pendency of his appeal to the Supreme Court of Connecticut, and this court admitted him to bail pending resolution of this habeas corpus proceeding (per order of Blumenfeld, J., May 11, 1979). Because he still faces the probationary sen-

## C. The Initial Identification

■ The identification procedure employed in this case, in which the victim of the crime is shown on a single suspect, is known as a "showup." Because of its highly suggestive nature, such a one–on–one confrontation is inherently less reliable and less fair than the alternative "lineup" method, in which the victim is asked to identify the perpetrator of the crime from a group of persons. Courts therefore treat as constitutionally suspect identifications established through the "showup" technique. *See, e. g., Foster v. California*, 394 U.S. 440, 442–43, 89 S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969); *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967); *Jackson v. Fogg*, 589 F.2d 108, 111 (2d Cir. 1978); *State v. Middleton*, 170 Conn. 601, 607–08, 368 A.2d 66, 69 (1976).

■ A "showup" identification is not, however, *per se* inadmissible. The admission of identification evidence based on an overly suggestive confrontation procedure is prohibited only if under "the totality of the circumstances," *Stovall v. Denno, supra*, 388 U.S. at 302, 87 S.Ct. at 1972, there is "a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1973), *quoting Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). As the Supreme

Court put it in *Manson v. Brathwaite*, 432 U.S. 98, 106, 97 S.Ct. 2243, 2249, 53 L.Ed.2d 140 (1977) (emphasis added), "[t]he admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses *sufficient aspects of reliability*."

In *Neil v. Biggers, supra*, the Supreme Court listed five factors which courts should consider in evaluating the reliability of challenged identification evidence. Those factors are: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." 409 U.S. at 199, 93 S.Ct. at 382. *See also Manson v. Brathwaite, supra*, 432 U.S. at 114, 97 S.Ct. at 2253; *Gonzalez v. Hammock*, No. 79–2226, slip op. at 5126 (2d Cir. Aug. 20, 1980); *Jackson v. Fogg, supra*, 589 F.2d at 111.

In this case, Willin contends that evidence of the "showup" identification by Michael Jordan should have been excluded from trial under the *Biggers* guidelines. I turn now to those guidelines as they pertain to Jordan's "showup" identification of Willin.[2]

---

tence, including mandatory psychiatric evaluation and possible treatment, Willin is "in custody," *see* 28 U.S.C. § 2254(a), for the purposes of federal habeas corpus, and this court has subject matter jurisdiction. *See United States v. Re*, 372 F.2d 641, 643 (2d Cir.), *cert. denied*, 388 U.S. 912, 87 S.Ct. 2112, 18 L.Ed.2d 1352 (1967) (probationary status is "custody" for habeas corpus purposes); *cf. Hensley v. Municipal Court*, 411 U.S. 345, 351–53, 93 S.Ct. 1571, 1574 ·1575, 36 L.Ed.2d 294 (1973) ("in custody" requirement satisfied despite release of defendant on his own recognizance pending execution of sentence); *United States ex rel. Smith v. DiBella*, 314 F.Supp. 446, 448 (D.Conn.1970) (Blumenfeld, J.) (same).

2. In ruling on Willin's motion to suppress the identification evidence, Judge Wright expressed the applicable test as follows:

What the Court must determine by this preliminary hearing, from all the *totality of the circumstances*, is whether the victim has made an independent identification based on

his own memory or recollection, or whether he has been induced by suggestions to pick out an individual.

Tr. 133 (emphasis added). This is an accurate statement of the standard developed in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The trial court's failure to make explicit reference to the factors listed in *Biggers* was not constitutional error, as Willin suggests. The *Biggers* factors are guidelines to aid judges in assessing the reliability of an identification under the "totality of the circumstances." Indeed, the trial court did take the Biggers factors into account, as is made clear in the special findings made by the court and included as part of the appellate record in the Supreme Court of Connecticut. *See State v. Willin*, 177 Conn. 248, 254 n.2, 413 A.2d 829, 832 n.2 (1979).

### 1. Witness' Opportunity to Observe

The record amply supports Judge Wright's findings that "[t]he witness Michael Jordan had a good and sufficient opportunity to view his assailant at the time of the assault" and that Jordan "viewed his assailant at close range and in adequate lighting." *State v. Willin, supra,* 177 Conn. at 254 n.2, 413 A.2d at 832 n.2 (quoting findings of Judge Wright). Jordan and a police officer testified that the area in which the assault took place was illuminated by nearby overhead lamps. Trial Transcript ("Tr.") 21–22, 83–84. Jordan testified that he made two direct observations of his assailant: first, from about 25 feet away, as the man approached him from behind, *id.* at 22–23, 151–52, and, second, from a distance of between six and ten feet, face–to–face, after Jordan had broken away from his attacker and was about to flee. *Id.* at 28–30, 164–66.

As Willin emphasizes, the fleeting nature of Jordan's glimpses of his assailant militates against the reliability of his identification. However, Jordan testified that his observation of his assailant, although brief, was enough to give him a clear impression of the man: "I saw his face, I saw his jacket, and I saw a white rag, or a towel." Tr. 165. Moreover, Jordan viewed his attacker from very close range, a fact which enhances the reliability of his observation and offsets its brevity. *See Gonzalez v. Hammock, supra,* slip op. at 5127, *United States v. Yanishefsky,* 500 F.2d 1327, 1330–31 (2d Cir. 1974) (where witness had stood a few feet from the criminal, identification testimony of witness subject to cross–examination was admissible although witness had only "fleeting" glance of criminal's profile).

### 2. Witness' Degree of Attention

Willin argues that as the victim of the assault, Jordan was concerned primarily with escape, not with observation of his attacker's features. However, despite a victim's natural inclination to seek cover or to flee, the Court of Appeals for the Second Circuit has stated that the victim of crime is apt to be a more reliable source of identification than is a mere spectator to the incident. *United States v. Mims,* 481 F.2d 636, 637 (2d Cir. 1973) (per curiam); *United States ex rel. Phipps v. Follette,* 428 F.2d 912, 915 (2d Cir.) (Friendly, J.), *cert. denied,* 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970). This proposition is based on the supposition that the searing personal impact of the criminal episode is likely to leave the victim with a particularly vivid recollection of events. Moreover, the victim's special emotional stake in the apprehension of the criminal is thought to make him especially "motivated to make a careful observation of the perpetrator." *United States ex rel. Phipps v. Follette, supra,* 428 F.2d at 915. Therefore, the fact that Jordan was the victim of the assault enhances, rather than diminishes, the reliability of his identification. *See also Neil v. Biggers, supra,* 409 U.S. at 200, 93 S.Ct. at 382.

### 3. Accuracy of Witness' Prior Description of the Criminal

Moments after the assault, Jordan described his attacker to the police as a man with dark hair, approximately as tall as one of the officers, wearing a purple jacket and a white rag or towel around his neck, and heading in a certain direction on a nearby bicycle path. Tr. 77–78. The trial court found that this description accurately corresponded to Willin's appearance and location at the time that he was picked up by police and therefore buttressed the credibility of Jordan's subsequent identification. *See State v. Willin, supra,* 177 Conn. at 254 n.2, 413 A.2d at 832 n.2. Willin contests this finding, pointing out that he was wearing a *maroon* jacket, not a purple one, when stopped by police and that the towel around his neck at the time was *light blue,* not white. While these subtle discrepancies in hue are somewhat troublesome, they do not necessarily detract from the general accuracy or credibility of Jordan's account.

Willin also argues that Jordan's description was so vague as to call into question the reliability of his subsequent identification. He points out, for example, that Jordan offered the police no description of his assailant's facial characteristics. However, the Supreme Court has noted a pre–identification description made by a witness need not be so detailed as to "have satisfied [Marcel] Proust." *Neil v. Biggers, supra*, 409 U.S. at 200, 93 S.Ct. at 382. Jordan's comments to police were sufficiently thorough to indicate that he had a strong, definite impression of his attacker's appearance prior to the identification proceeding.

4. *Certainty of the Witness' Identification at the Confrontation*

There is no evidence in the record that Jordan was uncertain or hesitant at the "showup" identification. Rather, both Jordan and one of the attending officers testified that Jordan's identification was immediate and positive. Tr. 38, 291. Such certainty of identification supports its reliability. *See Neil v. Biggers, supra*, 409 U.S. at 200, 93 S.Ct. at 382; *United States ex rel. Phipps v. Follette, supra*, 428 F.2d at 915.

5. *Length of Time Between Crime and Confrontation*

Jordan's identification of Willin came within 10 minutes of his assault. Such promptness of identification is recognized to be a powerful sign of its trustworthiness, for it suggests that the identification was based on a fresh mental picture of the criminal's features. *See Manson v. Brath-*

*waite, supra*, 432 U.S. at 115–16, 97 S.Ct. at 2253; *United States ex rel. Phipps v. Follette, supra*, 428 F.2d at 916; *State v. Middleton, supra*, 170 Conn. at 608, 368 A.2d at 69; *State v. Mallette*, 159 Conn. 143, 149, 267 A.2d 438, 441 (1970).

Willin argues, however, that at the time of the "showup" identification, Jordan was still in a state of great emotional distress brought on by the recent assault. In this case, Willin suggests, the promptness with which the identification followed the crime actually detracted from, rather than added to, the trustworthiness of the identification.

The effect of stress and excitement is a problem with any on–the–scene identification which closely follows the commission of a crime, particularly when the identifying witness was the crime's victim. However, as stated by the Court of Appeals for the District of Columbia Circuit, courts have permitted such "speedy, on–the–scene witness confrontations," despite the possible distorting influences, "because we have considered their dangers to be surpassed by their value in terms of the greater accuracy of witnesses' recollections when they are fresh and in terms of the benefit to society and suspects alike from having crimes quickly resolved." *United States v. Jones*, 517 F.2d 176, 179 (D.C.Cir.1975). *See also Bates v. United States*, 405 F.2d 1104, 1106 (D.C.Cir.1968); *State v. Middleton, supra*, 170 Conn. at 608, 368 A.2d at 69. On balance, the speed with which Jordan's identification followed the assault militates in favor of the identification's reliability.[3]

---

**3.** The notion that a nearly contemporaneous statement about an event, particularly when made under conditions of excitement induced by that occurrence, is especially likely to be trustworthy is a familiar one in the law of evidence. Thus, under Rule 803(1), Fed.R. Evid., a hearsay statement "describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter" is admissible in federal courts. Rule 803(2), Fed.R.Evid., permits the admission of a hearsay "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The Advisory Committee which drafted these

rules predicated them on the theories that a "substantial contemporaneity of event and statement negative[s] the likelihood of deliberate or conscious misrepresentation" and that "circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication." Advisory Committee's Note to Rules 803(1) and 803(2), 56 F.R.D. 303, 304 (1972). Although the Advisory Committee noted the criticism–which parallels the argument of the petitioner here–that "excitement impairs accuracy of observation as well as eliminating conscious fabrication," *id.*, the Committee, the Supreme Court (which promulgated the Federal Rules of Evidence) and the

■ Considering the "totality of the circumstances" in light of the *Biggers* guidelines, the court concludes that: (1) the victim had a reasonably good opportunity to observe his attacker; (2) Jordan's attention to the identity of his attacker was relatively high; (3) Jordan's description of his assailant was generally accurate, despite a slight variance between the colors of Willin's jacket and towel and the colors described by Jordan; (4) the "showup" identification by Jordan of Willin was made with certainty; and (5) the short period of time between the assault and the identification supports, rather than militates against, the reliability of the identification. On balance, therefore, the court concludes that Jordan's "showup" identification of Willin as his assailant was sufficiently reliable to be admitted under the constitutional standards of *Neil v. Biggers* and *Manson v. Brathwaite.*

### D. *The In–Court Identification*

■ A defective confrontation procedure may render inadmissible both the initial identification and a subsequent in–court identification. The test for admissibility of the in–court identification is the same as that for the initial identification: whether, under the "totality of the circumstances," the identification is sufficiently reliable despite the suggestiveness of the confrontation. In assessing the "totality of the circumstances," courts look to the guidelines listed in *Neil v. Biggers, supra,* 409 U.S. at 199–200, 93 S.Ct. at 382: the witness' opportunity to observe the criminal at the time of the crime; the degree to which the witness' attention was focused on the criminal; the accuracy and thoroughness of any pre–identification description offered by the witness to the police; the certainty with which the witness makes his identification; and the length of time between the crime and the identification. *See Manson v. Brathwaite, supra,* 432 U.S. at 106 n.9, 97 S.Ct. at 2249 n.9; *United States v. DiPalermo,* 606 F.2d 17, 20–21 (2d Cir. 1979), *cert. denied,* 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 599 (1980); *United States v. Sanchez,* 603 F.2d 381, 384–87 (2d Cir. 1979); *United States v. Williams,* 596 F.2d 44, 48–49 (2d Cir.), *cert. denied,* 442 U.S. 946, 99 S.Ct. 2893, 61 L.Ed.2d 317 (1979).

The analysis regarding Michael Jordan's in–court identification therefore parallels that regarding his on–the–scene identification, with one difference. The lapse of time between the crime and the in–court identification was 20 months, compared to 10 minutes between the crime and the initial identification. Although this longer intervening period is "a somewhat negative factor," *United States v. Williams, supra,* 596 F.2d at 49, it is not so long as to compel exclusion of the identification absent other indicia of its unreliability. *See United States v. Sanchez, supra* (in–court identification admitted 15 months after crime); *United States v. Williams, supra* (in–court identification admitted 32 months after crime). The reliability of the Jordan's identification was fortified, moreover, by the certainty with which it was made. *See United States v. Sanchez, supra,* 603 F.2d at 386.

The court concludes that the passage of time between the assault and the in–court identification of Willin by Jordan does not, in the circumstances presented here, detract sufficiently from the indicia of reliability discussed previously to have required its exclusion at trial. The admission of the in–court identification therefore did not violate the petitioner's due process rights.

Congress (which enacted the Rules) apparently believed that this danger was outweighed by the indicia of trustworthiness of spontaneous "excited utterances." *See also* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶¶ 803(1)[01] at 803–70–72, 803(2)[01] at 803-79 81 (1979); 6 J. Wigmore, *Evidence* § 1747 at 135 (3d ed. 1940); *McCormick on Evidence* § 297 at 703 (E. Cleary ed. 1972). The admissibility, on grounds of reliability, of such statements by a declarant not subject to cross–examination is noteworthy; in this case, the petitioner had ample opportunity to cross–examine the declarant concerning his nearly contemporaneous identification of Willin as his assailant. *See* note 4, *infra. Cf.* Rule 801(d)(1)(C), Fed.R. Evid. (permitting out–of–court statement of "identification of a person made after perceiving him," notwithstanding hearsay rule).

When all the relevant considerations are taken into account, the in–court identification of Willin by Jordan was sufficiently reliable to warrant its admission into evidence.

### E.  *The Jury Instructions*

Petitioner's final argument concerns the trial court's charge to the jury regarding Michael Jordan's identification evidence. Willin contends that the instructions were deficient because (1) they did not adequately advise the jurors of their responsibility to determine the reliability of the identification evidence, and (2) they contained no discussion of the reliability guidelines set out in *Neil v. Biggers, supra.*

A state court conviction will not be overturned in federal court because of a defective jury instruction unless the defect is of constitutional dimensions and "by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). *See also Wright v. Smith,* 569 F.2d 1188, 1191 (2d Cir. 1978); *Long v. Robinson,* 449 F.Supp. 333 (D.Conn.1978) (Blumenfeld, J.). A petitioner's burden is especially heavy when his argument is not that the jury instruction misstated the law but rather, as here, that the instruction was incomplete or insufficient. *Henderson v. Kibbe,* 431 U.S. 145, 154–55, 97 S.Ct. 1730, 1736–1737, 52 L.Ed.2d 203 (1977).

The record shows that Judge Wright instructed the jurors in this case: (1) that they should "determin[e] the reliability of the identification" made by Michael Jordan; (2) that in making this determination, they should consider "all the circumstances of the identification procedure," including any elements of suggestiveness; (3) that it is the province of the jury to assess the credibility of all witnesses and all evidence; and (4) that they could not return a verdict of guilty unless they were satisfied beyond a reasonable doubt that the identification was credible and reliable and that Michael Jordan properly and accurately identified petitioner as his assailant.  Tr. 460–61.

Even without explicit discussion of the *Biggers* guidelines, the trial court's instruction was clearly sufficient under the holdings of the Court of Appeals for the Second Circuit. By instructing the jurors to give careful scrutiny to the reliability and credibility of Jordan's identifications, the trial court went far beyond that which our Court of Appeals has required of federal jury instructions concerning such evidence. Indeed, the Court of Appeals has repeatedly refused to hold that federal jurors must be given a cautionary instruction of any kind on the reliability of identification evidence, at least where, as here, defendant's counsel has had ample opportunity to attack the evidence on cross examination and in closing argument.[4]  *See United States v. Montelbano,* 605 F.2d 56, 59 (2d Cir. 1979); *United States v. Marchand,* 564 F.2d 983, 997 (2d Cir. 1977) (Friendly, J.), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *United States v. Gentile,* 530 F.2d 461, 469 (2d Cir.), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2651, 49 L.Ed.2d 388 (1976); *United States v. Evans,* 484 F.2d 1178, 1187–88 (2d Cir. 1973); *United States v. Fernandez,* 456 F.2d 638, 643–44 (2d Cir. 1972).[5]  Each of these Court of Appeals decisions involved direct appeals from *federal* trial courts; as noted above, a *state* court jury instruction is subject to a less demanding standard of review in a collateral challenge in federal court.  *See Henderson v. Kibbe, supra,* 431 U.S. at 154, 97 S.Ct. at 1736; *United States ex rel. Winfield v. Cascles,* 403 F.Supp. 956, 958–59 (E.D.N.Y. 1975) (denying petition for writ of habeas

---

4. Such opportunity was clearly afforded Willin's counsel, and taken by him, in this case.

5. In contrast to the Second Circuit, the Fourth, Seventh and District of Columbia Circuits require that federal trial judges advise jurors of the dangers of eyewitness identification evidence, with references to some or all of the

*Biggers* guidelines on reliability.  *See United States v. Holley,* 502 F.2d 273 (4th Cir. 1974); *United States v. Hodges,* 515 F.2d 650 (7th Cir. 1975); *United States v. Telfaire,* 469 F.2d 552 (D.C. Cir. 1972). The Supreme Court has not ruled· on this issue.

corpus in which the petitioner relied upon the alleged inadequacy of state court instruction on identification evidence).

## Conclusion

For the foregoing reasons, the court finds no violation of the petitioner's right to due process of law in the proceedings before Judge Wright in the Superior Court. Accordingly, the petition for writ of habeas corpus is denied. The order staying the execution of the petitioner's sentence, entered by this court on May 11, 1979, is hereby vacated.

It is so ordered.